EASON OIL COMPANY, a corporation, Atlantic Richfield Company, a corporation, Crawley Petroleum Corporation, a corporation, Devon Corporation, a corporation, States Marine Corporation, a corporation, Texas American Oil Corp., a corporation, Union Texas Petroleum Corp., a corporation, P & O Oil Corporation, a corporation, James S. Smith, executor of the Estate of Arnold D. Freese, Plaintiffs–Appellees,

v.

HOWARD ENGINEERING, INC., a corporation, H. Boyd Howard, Linda Kay Howard, Nathan Bailey, a minor By and Through his legally appointed Guardian, Diane Bailey, Lynora Bailey, and Pamela L. Bailey, Defendants–Appellants.

No. 72237.

Supreme Court of Oklahoma.

Oct. 2, 1990.

Rehearing Denied Dec. 18, 1990.

THE ANATOMY OF LITIGATION

James C. Lang, Brian S. Gaskill, Melinda J. Martin, Sneed, Lang, Adams, Hamilton & Barnett, Tulsa, and Lloyd Rowland, Rowland & Rowland, Bartlesville, for appellants.

Clyde A. Muchmore, Richard C. Ford, Judy Hamilton Morse, Crowe & Dunlevy, Oklahoma City, for appellees.

OPALA, Vice Chief Justice.

The dispositive first-impression issue this case presents for our review is whether the working interest ownership regime in a producing well completed under Corporation Commission spacing and compulsory pooling orders is altered when a subsequent order reduces the size of drilling and spacing units for the same common source of supply. We answer in the negative, holding that once production was established from the designated common source of supply, the working interest in the producing well vested in proportion to participation under valid compulsory pooling orders. Our pronouncement declaring that vested working interests were not disturbed by the despacing order makes it unnecessary to consider the appellants' arguments concerning damages and the effective date of the despacing order.

The Corporation Commission designated 640–acre units for gas and gas condensate from the Mississippian common source of supply in an area known as the Sooner Trend.[1] The appellees are the operator and working interest owners [hereafter called *contractual participants*] whose leasehold interests are distributed throughout one 640–acre tract. They proposed a well and entered into a joint operating agreement to develop the unit. After the remaining interests came to be "force pooled",[2] the Dierksen No. 1 well, located in the northeast corner of Section 21, was drilled. It produced gas, oil and gas condensate from the Mississippian common source of supply.[3] The appellants [hereafter called *pooled participants*] own the majority mineral interest in the quarter-section where the well was drilled. They elected to participate under the pooling order but did not join in the operating agreement. The Commission later vacated the 640–acre spacing order for most of the sections previously spaced to the Mississippian common source of supply and created 160–acre spacing units for oil, gas and gas condensate.[4] By separate order the Commission suspended the effectiveness of its despacing order until final appellate disposition.[5] The despacing order was affirmed on appeal.[6]

1. See Commission orders, beginning with Order No. 49133 (the first drilling and spacing unit order), as last amended by Order No. 50337, which spaced 40 governmental sections, including *Section 21*, Township 22 North, Range 8 West, Garfield County, Oklahoma, *the section affected by this appeal.*

2. See Commission Order No. 133103. While the record does not contain the original spacing or pooling orders, any fact either stipulated or admitted in the briefs may be considered as supplementing and curing a deficient appellate record. *Depuy v. Hoeme*, Okl., 775 P.2d 1339, 1341, n. 13 [1989]; *Reeves v. Agee*, Okl., 769 P.2d 745, 753, 756 [1989]; *Womack v. City of Oklahoma City*, Okl., 726 P.2d 1178, 1181, n. 8 [1986]. In their briefs to us both parties refer to the pooling order and to the original spacing orders. The terms of these orders are undisputed.

3. See *supra* note 1 for the legal description of Section 21.

4. Commission Order 148243. The despacing order (a) vacated the prior spacing order as to Section 21 and reduced the 640–acre spacing to 160–acre units for oil, gas and gas condensate from the Mississippian common source of supply; (b) pooled and unitized all royalty interests within each drilling and spacing unit, (c) determined that each royalty owner shall share in one-eighth of all production from any well thereon in the proportion that the acreage owned by each royalty owner bears to the entire acreage in the 160–acre drilling and spacing unit and (d) determined the despacing order's effective date to be January 1, 1979.

5. Order No. 148242.

6. The despacing order was affirmed in *Union Texas, Etc. v. Corporation Com'n, Etc.*, Okl., 651 P.2d 652 [1982], cert. denied 1982 (103 S.Ct. 82, 459 U.S. 837, 74 L.Ed.2d 78).

The contractual participants brought the suit under review against the pooled participants, the royalty owners and the owners of top leases on acreage outside the quarter-section containing the producing well (a) to quiet title in their leasehold interest and (b) for a declaration of ownership of a right to receive royalty from the producing well.[7] The pooled participants counterclaimed for increased production revenue. In their view, the despacing order instantly increased both their mineral interest in the producing unit and the proportion of production revenue due them from the contractual participants.[8]

Initially the district court summarily resolved some of the quiet title issues in favor of the contractual participants.[9] The pooled participants then moved for summary judgment on their counterclaim. The district court denied their quest. The appeal from this adverse disposition was dismissed for want of a final, appealable order.[10] On remand the trial court (1) quieted title to the contractual participants' interest in production from the Dierksen No. 1 well under the percentage established before despacing, (2) reaffirmed the two earlier interlocutory dispositions, (3) denied the pooled participants' counterclaim, and (4) determined the despacing order's effective date to be October 4, 1982. The pooled participants bring this appeal.

## Governing Principles

As a general rule, in order to prevent waste[11] and to protect the correlative rights[12] of interested parties, the Commission prospectively establishes the size of drilling and spacing units within a geographical boundary in designated sources of supply upon the owners' application for

7. Defendants other than the pooled participants were dismissed from this suit without prejudice.

8. The pooled participants claimed that their leasehold interest in the Dierkson No. 1 Well increased from 43.6% (with production based on 640–acre spacing) to 74.4% (with production based on 160–acre spacing). They asserted that the contractual participants have damaged them by the difference between the amount they have been paid and the amount they should have received as a result of the Commission despacing order. See *Eason Oil Co. v. Howard Engineering, infra* note 10.

9. The district court rendered a partial summary adjudication for the plaintiffs (contractual participants), ruling that: (1) it has subject matter jurisdiction to determine who has the right to drill on the lands in question; (2) the Commission has exclusive jurisdiction to determine the date its despacing order became final; (3) the despacing order became effective October 4, 1982—the date the U.S. Supreme Court denied certiorari to review the despacing order (see footnote 6 *supra*); (4) the despacing order resulted in the temporary cessation of production of the leases within the newly created 160–acre drilling and spacing units that did not have producing wells located thereon; (5) the leases that are the subject of litigation and cover lands in the newly established 160–acre drilling and spacing units, which have no wells located thereon, allow lessees additional time to resume drilling operations after the effective date of the despacing order; and (6) the effect of the plaintiffs' failure to drill and develop oil and gas interests on the 160–acre units is relevant only to the extent that such failure occurred after the

effective date of the Commission's despacing order.

The pooled participants' quest for appellate review of this disposition by petition for certiorari to review a certified interlocutory order was denied July 23, 1984. *Howard Engineering, Inc. v. Eason Oil Company,* No. 61,861.

10. *Eason Oil Co. v. Howard Engineering,* Okl., 755 P.2d 669 [1988].

11. See 52 O.S.Supp.1977 § 87.1(a), the statute in effect when the pooling and spacing orders were entered. These principles remain unchanged in the present statutory scheme (52 O.S.Supp.1988 § 87.1). See also 52 O.S.1981 § 273; Harris, *Modification of Corporation Commission Orders Pertaining to a Common Source of Supply,* 11 Okla.L.Rev. 125, 127 [1958]; *Wood Oil Co. v. Corporation Commission,* Okl., 268 P.2d 878, 884 [1954]; *Wood Oil Co. v. Corporation Commission,* Okl., 205 Okl. 537, 239 P.2d 1023, 1026 [1950].

12. See in this connection Harris, *supra* note 11 at 129, where the author defines the concept of correlative rights as "... the aggregate of the compromised and reconciled rights, privileges and restraints which is substituted for the separate independent and interdependent bundles of adverse and competing rights and duties which are vested in different classes of individual owners ..."; see also *Kingwood Oil Company v. Hall–Jones Oil Corporation,* Okl., 396 P.2d 510, 512 [1964]; *Pelican Prod. v. Wishbone Oil & Gas,* Okl.App., 746 P.2d 209, 211, 212 [1987]; *United Petroleum Exploration v. Premier Resources,* 511 F.Supp. 127, 129 [W.D.Okl.1980]; 83 Oil and Gas

a right to drill a well.[13] Where it appears that the owners of separately owned tracts of land embraced within a specific drilling unit have not agreed to pool their interests and to develop their lands, the Commission, on application, may issue an order that designates the unit operator, establishes an estimated cost of drilling the well and allows each owner the opportunity to elect or forego the right to participate in the well.[14] Participating parties then pay to drill and complete the well according to the proportion of their mineral interest in the unit. Each proportion is based on the percentage of acreage contributed to the spaced unit. Once production is established in the spaced common source of supply, the working interest owners recover their costs and continue to receive their share of production revenue.[15] Royalty owners receive a statutory non-cost-bearing share of production.[16]

Under the spacing statute,[17] only one well is drilled and produced from a given formation within a drilling and spacing unit unless the Commission, to increase recovery, orders increased density drilling or despacing.[18] If the latter should occur, one well is permitted within the boundaries of each newly formed unit.

The task before us is to determine whether the despacing order divests original participants of future production revenue from the Dierksen No. 1 well or whether interest in production became vested upon election to participate under the pooling order and remains unchanged for the life of the well.

## The Vesting Of Rights Under The Initial Spacing And Pooling Orders

We have on several occasions addressed the effect of post-order events on property rights that stand vested under pooling and spacing orders. In *Crest Resources v. Corporation Commission*[19] we determined that absent some "vitiating infirmity" in their creation, property interests vest and are beyond the reach of the Commission's power to modify after the pooling order's election period has come to an end and interest owners have paid or furnished security for their proportionate share of the estimated costs. In *Amoco Production Company v. Corporation Commission*[20] the court held that property interests vested under the initial pooling order and that a subsequent order granting a second election to participate in newly drilled wells would deprive the original-risk-capital investors of their vested property rights. More recently, in *Ranola Oil Co. v. Corporation Commission*,[21] this court reaffirmed its commitment to the *Crest* teaching that once property rights have vested at the end of the election period, they may not be modified or extinguished. The court in *Ranola* examined the rights acquired by participants electing under a pooling order where non-participants in the initial well sought to participate in three subsequent wells in the pooled unit. Since the original well was successful, the court reasoned the participants should be permitted to reap the benefits of their venture in that well and in the three increased density wells. Participation in the increased density wells by a non-participant in the initial well would di-

Reporter 108, 114, citing *Murphy v. Amoco Production Co.*, 590 F.Supp. 455 [N.D.1984].

**13.** 52 O.S.Supp.1977 § 87.1(a); *Ward v. Corporation Commission.*, Okl., 501 P.2d 503, 507 [1972].

**14.** 52 O.S.Supp.1977 § 87.1(e).

**15.** Dancy and Dancy, *Regulation of the Oil and Gas Industry by the Oklahoma Corporation Commission*, 21 Tulsa L.J. 613, 626 [1986].

**16.** Other parties may be entitled to share in production, but the distribution of that revenue is not at issue and is not addressed here.

**17.** 52 O.S.Supp.1977 § 87.1.

**18.** 52 O.S.Supp.1977 § 87.1(d).

**19.** Okl., 617 P.2d 215, 218 [1980].

**20.** Okl.App., 751 P.2d 203 [1988]. In *Amoco* the issue presented was whether a forced-pooling order pooled the working interest in a single wellbore or on a unit-wide basis. The appellate court held that a mineral interest owner who elected to accept bonus payments instead of participating in the initial well under a forced-pooling order was not entitled to participate in subsequent wells.

**21.** Okl., 752 P.2d 1116 [1988].

vest the operator's vested interest in contravention of substantive due process protection.

Under a valid Commission pooling order, all participants, both voluntary and those forced to pool their lands, relinquished for one well—the Dierksen No. 1—their individual right to drill. The proportionate share of the cost of drilling and completing the now-producing well was determined and, as in *Crest*, property interests vested. As we noted in *Amoco* and *Ranola*, any subsequent reapportionment of the vested interest in production would deprive some original-risk-capital investors of their property rights. In contrast to *Crest, Amoco* or *Ranola*, the critical factor here is the subsequent despacing order. But the question remains the same—whether the Commission's despacing order may operate to extinguish rights previously acquired under a valid pooling order.

The pooled participants argue that once the spacing order was vacated as to the 640–acre unit, the essential prerequisite for pooling was removed and thus the rights that had vested thereunder were modified by the subsequent despacing order. In other words, vacation of the original spacing order is asserted to be a "vitiating infirmity"[22] that makes these rights subject to the Commission's power to modify. In support of that proposition, they cite *Wood Oil Company v. Corporation Commission*.[23] At issue there was the interest of an unleased, unpooled mineral owner whose right to participate in a completed and producing well did not accrue until the well was spaced by Commission order. Wood Oil urged that its vested interest to all production accrued upon discovery and

initial production—both events occurring before the spacing order.[24] The court held that when a unit is spaced, a non-participating, unpooled mineral interest owner is entitled to share in the production of the well from the time of spacing in proportion to the acreage it owned by paying a proportionate cost of developing and equipping the well. *Wood* is factually distinguishable in that there the well was drilled and production obtained *before* the boundaries of the unit were established by the Commission spacing order. When finally spaced, the unit included acreage belonging to unleased, non-participating parties.[25] As in *Crest*[26] the interest in production vested in *Wood* once all interest owners were allowed to act on their lawful right to participate and production was obtained from the spaced unit.

*Helmerich & Payne, Inc. v. Corporation Commission*[27] is urged by pooled participants as authority to strike down the compulsory pooling order under which the parties participated in the Dierksen No. 1 well. The Commission in *Helmerich* exceeded its statutory authority by requiring an election as to the development of a nine-section area in a single pooling order involving 640–acre spacing units. The court held the pooling order was invalid. Interest in production did not vest. No analogous argument is advanced here as to the pooling order upon which an election by the pooled participants was predicated. The pooling order in question before us was valid at and from its inception—not facially void *ab initio*.

The pooled participants rely on *Union Oil Co. of California v. Brown*,[28] for the

**22.** The pooled participants refer us to *Crest Resources v. Corporation Commission, supra* note 19 at 218, in support of their argument that a "vitiating infirmity" exists in the rights created under the pooling order.

**23.** *Supra* note 11, 239 P.2d at 1023.

**24.** *Wood Oil Company v. Corporation Commission, supra* note 11, 239 P.2d at 1026.

**25.** *Wood Oil Company v. Corporation Commission, supra* note 11, 239 P.2d at 1027.

In *Ward v. Corporation Commission, supra* note 13, the court held that non-drilling lessees and mineral owners share in production of a spaced well *as of the time the unit is initially established by a spacing order*. As in *Wood, supra* note 11, 239 P.2d at 1026, the well was completed before the drilling and spacing unit was established.

**26.** *Crest Resources v. Corporation Commission, supra* note 19 at 215.

**27.** Okl., 532 P.2d 419 [1975].

**28.** Okl., 641 P.2d 1106 [1982].

proposition that the subsequent despacing order diminished the contractual participants' right to future production. The court in *Union* held there was no indefeasible claim (vested right) to the continuation of an oil unit shown to be larger than that which was authorized by statute.[29] The court addressed the issue of a vested right embodied in an oil and gas lease, but did not decide what effect, if any, the despacing order had on the working interest in the producing unit.[30]

Unlike in *Wood*, a valid Commission order preceded here the pooling of interests. All parties were allowed to choose whether to participate in the Dierksen No. 1 well. The pooling order remains valid and binding on the participating interests that vested thereunder.

We hold that the Commission's action to despace the area and establish 160–acre units for future wells did not divest the working interest owners of their vested right to production from the existing well according to the initial investment percentage under a prior valid pooling order. Each participant in the Dierksen No. 1 well risked his investment in production in proportion to the leasehold estate in the 640–acre unit. The contractual participants availed themselves of every possible opportunity to protect their initial investment.[31] *A fixed (accrued) present right (vested right) of future enjoyment in production from that well was created* when all parties with a right to drill were allowed the advance opportunity to participate in the unit well. The pooling order is valid *ab initio*—from its very inception. No impairment or infirmity clouds its creation or present vitality.

The trial court's decree confirming the rights of the participants in the production from the Dierksen No. 1 well is affirmed.

All Justices concur.

---

**29.** See 52 O.S.Supp.1977 § 87.1(b); *Union Oil Co. of California v. Brown, supra* note 28 at 1109–1110.

**30.** The pooled participants also cite *Southern Union Production Co. v. Eason Oil Company,* Okl.App., 540 P.2d 603 [1975], in support of their view that the effectiveness of the pooling order ended when the basic spacing order had been withdrawn by the establishment of a new drilling and spacing unit. The holding in

*Southern* is limited to a situation where the unit well is *non-productive.* Moreover, *Southern* does not have precedential authority and we need not consider its effect upon existing jurisprudence.

**31.** These participants initiated the Commission pooling order which encouraged participation in the successful unit well.