2006 OK CIV APP 12

**HARDING & SHELTON, INC., and Consolidated American Resources, L.L.C., Appellants,**

v.

**SUNDOWN ENERGY, INC., Appellee,**

IBEX Resources, L.L.C., JMA Company, L.L.C., Dominion Exploration, Chesapeake Operating, Inc., Tex–Star, Inc., Mustang Production Company, Legacy Resources, L.L.C., and the Corporation Commission of the State of Oklahoma, Respondents.[1]

No. 101,570.

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 20, 2006.

---

1. Respondents Tex–Star Production (named as Tex–Star, Inc.), IBEX Resources, L.L.C., JMA Company, L.L.C., Chesapeake Operating, Inc. and the Oklahoma Corporation Commission have filed Notice(s) of Nonparticipation in this appeal. Respondent Dominion Exploration Midconti- nent, Inc. (named as Dominion Exploration) filed an entry of appearance, but no response to the petition in error or brief. Respondents Mustang Production Company and Legacy Resources, L.L.C., have filed no entry of appearance, response to the petition in error or brief.

Gregory L. Mahaffey, Ryan W. Sears, Oklahoma City, OK, for Appellants.

Tim W. Green, Guthrie, OK, for Appellee.

Opinion by LARRY JOPLIN, Judge.

¶1 Appellants Harding & Shelton, Inc., and Consolidated American Resources, L.L.C. (Applicants), seek review of an order of the Corporation Commission granting in part and denying in part its application for pooling order. In this proceeding, Applicants complain the Commission erred as a matter of both fact and law in denying that part of its application by which Applicants sought pooling of formations subject to a prior pooling order. Having reviewed the record, the order of the Commission is affirmed.

¶2 In 1969, 1970 and 1977, the Corporation Commission entered orders establishing a 640 acre drilling and spacing unit for various formations underlying section 20, Township 16 North, Range 18 West, I.M., in Dewey County, Oklahoma. In December 1985, the Commission entered Order No. 289640, establishing a 640 acre drilling and spacing unit for the Oswego Lime, Cleveland Sand, Douglas Sand, Tonkawa, Cottage Grove, Cherokee Sand, Morrow, Springer and Chester Lime formations underlying section 20, and appointed Sanguine, Ltd. (Sanguine) as operator. Subsequently, the Rounds 1–20 well was drilled and completed in the southwest quarter of section 20, producing from the Chester Lime formation.

¶3 The holder of one or more leases covering 160 acres of the 640–acre unit released its lease(s); the owner of one or more leases covering 320 acres of the unit released its lease(s) except as to the well bore of the existing Rounds 1–20 well. Applicants subsequently obtained leases covering those 480 acres.

¶4 In 2004, Applicants filed an application (as amended) to pool the rights and interests of mineral owners in the Cherokee Sand, Chester Lime, Cleveland Sand, Cottage Grove, Douglas Sand, Morrow, Oswego, Springer, and Tonkawa formations, all subject to the 1985 pooling order, as well as the lower, unpooled Atoka, Hunton, Mississippi, and Viola formations underlying section 20 in order to drill a well through both the previously pooled formations and the lower unpooled formations to the lowest (Viola) formation. Mustang, owner of the remaining 160 mineral acres in section 20, filed a Response, Adoption of Application and Request for Affirmative Relief, adopting Applicants' position and asking for entry of Applicants' requested pooling order.

¶5 Respondents Sundown Energy, Inc., JMA Company, L.L.C. and Dominion Exploration (Sanguine's successor) protested, challenging Applicants' standing to seek pooling of the formations previously pooled by the 1985 Sanguine order. Sundown specifically argued that the 1985 pooling order remained in full force and effect; that any relief on the current application constituted an impermissible collateral attack on the prior pooling order; and, because Applicants obtained their leasehold interests subject to the prior, valid pooling order, Applicants had no standing to prosecute this new pooling application in derogation of the prior order.

¶6 Applicants responded. First, they asserted that neither they nor the actual mineral owners were parties to the prior pooling proceedings, so the prior pooling orders had no effect as to them. Second, they pointed out, Mustang, as owner of the interest farmed out to Sanguine, possessed standing to seek relief as to the previously pooled formations, and had joined in their prayer for affirmative relief. Third, Applicants argued that the protestants' right to object depended on their status as Sanguine's successor, but that the protestants possessed no interest in the unit to protect. Lastly, they argued that to sustain the protestant's objection would affect the private, contractual, leasehold

rights of the Applicants, exceeding the Commission's limited authority to protect correlative rights.

¶ 7 Upon hearing, an administrative law judge (ALJ) determined that Applicants possessed standing to seek both pooling of the previously unpooled formations in the present action, and modification of the previous pooling order in a proceeding commenced for that purpose. The ALJ consequently recommended approval of Applicants' pooling request as to the Atoka, Mississippi, Hunton and Viola formations, but recommended denial of the pooling application as to all of the other formations still subject to the valid 1985 pooling order.

¶ 8 Applicants appealed, challenging the ALJ's recommendation to deny that part of their application as to the previously pooled formations, and again asserted invalidity of the prior pooling proceedings as to them, non-parties in those proceedings. An appellate referee affirmed the decision of the ALJ with modification, holding: (1) "[w]hile some of the arguments are couched in terms of 'standing,' the true issues concern collateral attack and the power of the Commission to modify its prior orders"; (2) Applicants "presented no showing ... of a change in conditions or knowledge of conditions necessitating the repeal, amendment or modification of" the 1985 pooling order; (3) Applicants' "pooling application constitutes a collateral attack on" the 1985 pooling order, proscribed by 52 O.S. § 111; but, (4) "[u]nder 52 O.S. § 112, [Applicants] ... have standing to seek to show a change of conditions or knowledge of conditions necessitating the repeal, amendment or modification of" the 1985 pooling order.

¶ 9 Upon further proceedings before the Commission en banc, the Commission adopted the recommendations of the appellate referee and appointed Applicant Harding & Shelton, Inc. as operator. Applicants appeal.

■■■ ¶ 10 The Corporation Commission is a tribunal of limited jurisdiction and has only such authority as is expressly or by necessary implication conferred upon it by the Constitution and statutes of this state. Okla. Const., art. IX, § 18; *Merritt v. Cor-*

*poration Comm.,* 1968 OK 19, 438 P.2d 495; *Chicago R.I. & P. Ry. Co. v. State,* 1932 OK 467, 12 P.2d 494. "[T]he enactments for the conservation of oil and gas are public in nature," and the Corporation Commission is statutorily charged with the authority and responsibility "to protect correlative rights ... [and] the public interest in orderly development and production of resources and the prevention of the drilling of unnecessary wells." *Samson Resources Co. v. Corporation Com'n,* 1985 OK 31, ¶ 10, 702 P.2d 19, 22; *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 1984 OK 52, ¶ 18, 687 P.2d 1049, 1052. When considering whether to grant or deny an application to pool common sources of supply, the Corporation Commission possesses "incidental" authority to determine whether a prior pooling order was still effective as to the applicant's interest. *Buttram Energies, Inc. v. Corporation Commission of State of Okl.,* 1981 OK 59, ¶ 7, 629 P.2d 1252, 1254.

■■■ ¶ 11 "Under the spacing statute, [52 O.S. § 87.1,] only one well is drilled and produced from a given formation within a drilling and spacing unit unless the Commission, to increase recovery, orders increased density drilling or despacing." *Eason Oil Co. v. Howard Engineering, Inc.,* 1990 OK 101, ¶ 6, 801 P.2d 710, 713. A pooling order ordinarily remains in effect so long as production continues from the pooled common source(s) of supply. *See, Southern Union Production Co. v. Eason Oil Co.,* 1975 OK CIV APP 48, ¶ 16, 540 P.2d 603, 608. *See also,* 5 Summers, *The Law of Oil and Gas,* § 953. Upon proper proof of a change of condition, or a change in knowledge of conditions, the Corporation Commission may modify or vacate a prior pooling order. 52 O.S. § 112; *Anson Corp. v. Hill,* 1992 OK 138, ¶ 11, 841 P.2d 583, 586; *Mustang Production Co. v. Corporation Com'n of the State of Oklahoma,* 1989 OK 35, ¶ 8, 771 P.2d 201, 203. However, absent proof of such a change of condition or knowledge of conditions, orders of the Corporation Commission affecting the development of common sources of supply constitute a final adjudication of the rights and obligations of the common source mineral interest holders, and, once

rights become fixed under such orders, those orders are not subject to a later collateral attack. 52 O.S. § 111; *Eason Oil Co.,* 1990 OK 101, ¶ 8, 801 P.2d at 713–714.

¶ 12 In matters within its expertise, the Commission's findings are presumed correct. *See, e.g., MCI Telecommunications Corp. v. State,* 1991 OK 86, ¶ 22, 823 P.2d 351, 358. "The Commission has wide discretion in the performance of its duties and this Court may not substitute its judgment on disputed questions of fact unless the findings are contrary to law or unsupported by substantial evidence." Id.

¶ 13 In the present case, Applicants, as successor lessees of 480 acres of the 640 acre unit previously pooled, sought to both re-pool the formations covered by the 1985 pooling order, and to pool previously unpooled formations underlying the same 640 acres. The prior pooling order constitutes a final determination of the rights and obligations of any present or future holders of a mineral interest in the affected common source(s) of supply, because to hold otherwise would cast the established rights and obligations of any holder of a mineral interest in the previously pooled common source(s) into chaos every time there was a change in ownership of mineral or leasehold rights in any pooled formation. Applicants must be held to have obtained their lease(s)

subject to the terms of the prior pooling order.

¶ 14 Further, the Corporation Commission clearly possessed the jurisdiction and authority to determine whether the previous pooling order remained in effect. In this respect, Applicants presented no evidence of either (1) a cessation of production from the Rounds 1–20 well, completed in the pooled Chester Lime common source of supply, as to render the prior order otherwise than in full force and effect, or (2) a change of condition or knowledge of conditions as to render modification of the prior pooling order proper. The previous pooling order, valid on its face, is impervious to collateral attack, and absent evidence of a cessation of production from the pooled common source of supply, or a change of conditions or knowledge of conditions, we cannot say the Corporation Commission erred as a matter of either fact or law in denying Applicants' request to re-pool the previously pooled formations.

¶ 15 The order of the Corporation Commission is therefore AFFIRMED.

HANSEN, J., and BELL, P.J., concur.