2015 OK CIV APP 51

**EAGLE ENERGY PRODUCTION, L.L.C., Claremont Corporation, and Pomona Production, L.L.C., Appellants,**

v.

The **CORPORATION COMMISSION OF the STATE of Oklahoma, composed of The Honorable Patrice Douglas, Chairman, The Honorable Bob Anthony, Vice Chairman, and The Honorable Dana L. Murphy, Commissioner; Tower Royalty Company, L.L.C.; and Thistle Royalty Company, L.L.C., Appellees.**

No. 112,165.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 5, 2014.

Rehearing Denied Feb. 3, 2015.

Certiorari Denied May 4, 2015.

Michael D. Stack, Oklahoma City, Oklahoma, for Appellant Eagle Energy.

John R. Reeves and, Matthew J. Allen, Oklahoma City, Oklahoma, for Appellant Claremont Corp.

John E. Lee, III, Edmond, Oklahoma, for Appellant Pomona Prod.

Robert G. Gum, Oklahoma City, Oklahoma, for Appellees, Tower Royalty Company, L.L.C. and Thistle Royalty Company, L.L.C.

Robert J. Campbell, Jr., Oklahoma City, Oklahoma, for Appellee, The Corporation Commission of the State of Oklahoma.

Terry L. Stowers, Norman, Oklahoma, for Intervenor, Coalition of Oklahoma Surface and Mineral Owners, L.L.C.

LARRY JOPLIN, Presiding Judge.

¶ 1 Appellants, Eagle Energy Production, L.L.C., Claremont Corporation and Pomona Production, L.L.C., seek review of an order of the Oklahoma Corporation Commission denying motions to reconsider the Commission's order of August 22, 2013, in which the Commission found Appellees, Tower Royalty Co., L.L.C. and Thistle Royalty Co., L.L.C., are not bound by forced pooling order No. 552381, issued on April 8, 2008. Appellants complain the Commission erred in its determination that the 2008 Commission order did not effectively pool the rights of Tower Royalty Co. or its successor, Thistle Royalty Co.

¶ 2 In November 2007, Orca Resources L.L.C., the pooling applicant, filed the pooling application at issue in this cause, seeking to pool the drilling rights of the owners in the 640–acre horizontal drilling and spacing unit formed for the Misener–Hunton common source of supply, in Section 30, Township 15 North, Range 4 East of I.M., Lincoln County, Oklahoma. Tower Royalty, Appellee, owned mineral interests in the spacing unit for which Orca sought the pooling order.

¶ 3 On March 27, 2007, prior to Orca filing the pooling application later that year, Tower entered into a one-year oil and gas lease with Blackburn Properties, Inc. The lease covered 155.69 mineral acres within the spacing unit at issue. The lease provided that if drilling of a well, resulting in oil and gas production in paying quantities, was commenced within the primary term of the lease, the lease would be extended. There is no evidence in the record that oil and gas production commenced within the term of the lease, which might have extended the lease. Instead, the Tower–Blackburn lease expired on March 27, 2008, according to the terms of the lease itself.

¶ 4 As Orca proceeded with the pooling application, Blackburn was listed as one of the respondents in the pooling proceeding, because Blackburn entered into the mineral lease with Tower Royalty earlier that year. Terms of the Tower–Blackburn lease, including the lease expiration date, were available to Orca during the pooling process. Prior to the expiration of its lease, Blackburn protested the pooling application as one of the respondents. Tower Royalty was never served or listed as a respondent in the pooling proceedings, although Appellants allege Tower had actual notice and was in collusion with Blackburn to impede application of the pooling order. Blackburn made no election un-

der the pooling order. The pooling hearing was held on January 8, 2008 and the pooling order (No. 552381) was issued by the Corporation Commission on April 8, 2008, twelve days *after* the Tower–Blackburn lease expired. Special Energy, Inc. was named operator under the 2008 pooling order. After Special Energy acquired the working interests and drilling rights, Special Energy conveyed them to Eagle Energy Production, L.L.C., Claremont Corporation and Pomona Production, L.L.C. A bonus from the production was paid to Blackburn, Blackburn having been listed in the pooling order and having made no election. Tower was not included in the 2008 order and was given no bonus payment under the terms of the pooling.

¶ 5 Appellants allege the lease between Tower and Blackburn was an attempt to "game" the system and avoid the pooling order. The Commission's August 22, 2013 order makes reference to Appellants' allegations that Tower and Blackburn did not engage in an arm's length transaction and did not establish a fair market value for the lease. In fact, the Commission's 2008 order found the Tower–Blackburn lease was not representative of fair market value. During the most recent request for clarification proceedings, Appellants continued to assert allegations of impropriety or "not acting in good faith" on the part of Tower and Blackburn. Although Appellants assert the allegations of impropriety are not new and were brought prior to the latest proceeding, the record does not indicate the Commission ever made a finding of bad faith or improper conduct on the part of Tower or Blackburn, and there are no stipulated facts asserting Tower or Blackburn acted improperly.

¶ 6 After the pooling order was issued, Tower filed an affidavit of notice on September 26, 2008 in Lincoln County, asserting the Tower–Blackburn lease expired prior to the issuance of the pooling order and that Tower was not a respondent in the pooling proceedings, and therefore not subject to the pooling order. On July 22, 2010, Tower and Thistle [1] filed a quiet title action in Lincoln County against Appellants, asserting their working interests were not subject to the 2008 pooling order. On September 27, 2010, Eagle Energy initiated the current matter at the Corporation Commission, asking the Commission to determine that the interests of Tower and Thistle have been and remain subject to the 2008 pooling order. The district court proceeding was thereafter stayed, pending a final determination by the Commission. After both an ALJ Report and an Appellate Referee report recommended finding that the drilling rights of Tower and Thistle were subject to the 2008 pooling order, the Commission *en banc* heard oral argument on June 30, 2013. The Commission issued its decision on August 22, 2013, finding the 2008 pooling order (No. 552381) did "not pool or otherwise affect the rights, titles, interests or obligations of either Tower Royalty Company, L.L.C. or Thistle Royalty Company, L.L.C. with respect to any mineral interests they own" in the described section. Eagle, Claremont and Pomona filed motions to reconsider. Those motions were denied, resulting in the appealed from "Order Denying Motions to Reconsider."

¶ 7 Review of a challenge on appeal from an order of the Oklahoma Corporation Commission is outlined in Article IX, § 20 of the Oklahoma Constitution.

> The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. Upon review, the Supreme Court shall enter judgment,

---

1. Thistle is successor to an undivided portion of Tower's interest, having later acquired an undivided portion of the mineral interest that had once been leased to Blackburn.

either affirming or reversing the order of the Commission appealed from[.]

*Henry v. Corporation Comm'n of the State of Oklahoma,* 1990 OK 103, 825 P.2d 1262, 1266–67 (*quoting* Okla. Const. art. IX, § 20). Each Appellant, Eagle Energy, Claremont and Pomona Production, filed separate appeals and briefing materials. The three related cases of Appellants, *Eagle Energy v. The Corporation Commission, et al.* (112,-165), *Claremont Corporation v. The Corporation Commission, et al.* (112,166), and *Pomona Production, L.L.C. v. The Corporation Commission, et al.* (112,171), were consolidated on appeal by order of the Oklahoma Supreme Court, September 23, 2013. Appellants in their appellate briefs allege both similar propositions of error as well as separate and unique propositions that were not shared amongst Appellants. Appellees, Tower and Thistle, and the Corporation Commission responded separately to each set of the Appellants' briefing materials. Because the propositions of error are not identical across each set of filings, this single opinion will address each of Appellants' set of alleged errors separately.

## I. Eagle Energy

¶ 8 Eagle asserts three propositions of error in its claim that the Commission's order violates its substantive due process rights. Eagle's first and third propositions are related. First, Eagle asserts the Commission's jurisdiction continued to be effective as to the mineral and drilling rights, even after the Tower–Blackburn lease expired and those rights reverted back to the owner/lessor, Tower. And second, Eagle claims the Commission's jurisdiction attached to the drilling rights at issue prior to the expiration of the primary term of Blackburn's lease, so that expiration of the lease prior to the effective date of the Commission's order did not obviate the effectiveness of the order as to Blackburn, Tower, or any other entity that may later come to the oil and gas rights after Blackburn. Eagle argues this is so because the Commission's jurisdiction attached to the drilling rights *in rem* without regard for who owned the rights

at the time the order was issued. Eagle also claims the drilling rights were subject to the pooling order, despite the fact the lease expired, Tower was not named as a respondent in the proceeding, and Tower was not given notice as provided for by statute. 52 O.S. Supp.2007 § 87.1(e).

¶ 9 The appealed from order states the primary question at issue in this case is "whether a pooling order binds a lessor of an oil and gas lease which expires prior to issuance of a pooling order." The appealed from order states the effective date of the 2008 order was April 8, 2008 and the Tower–Blackburn lease expired prior to the effective date of the 2008 order, on March 27, 2008. The appealed from order goes on to note that neither Tower nor Thistle was a party to the 2008 pooling, neither owned the right to drill or produce at the time the pooling was initiated, Tower and Thistle were not named in the pooling application, and no notice was given to Tower or Thistle. The resulting pooling order (No. 552381) does not name either Tower or Thistle. And the Commission concludes, "the Applicant (Orca) for the pooling order never perfected its right to force pooling relief against Tower and Thistle or their interests."

¶ 10 Eagle's first and third propositions of error attempt to counter the importance of the effective date of the order by arguing that notice to Blackburn, Tower's lessee, and inclusion of Blackburn in the pooling process, while Blackburn held the oil and gas lease, is sufficient to pool the interest of any Blackburn successor, even though Blackburn no longer owned the mineral interests when the order issued. In essence, Eagle argues because Blackburn owned the mineral interests at some point in the pooling process, that is enough to bind all who come to the mineral interests after Blackburn. To this end, Eagle argues the Commission's jurisdiction attached to the drilling rights *in rem,* prior to the issuance of the order. It should be noted that Commission orders, as per the Commission's own rules, issue and become effective on the date the order is signed by the Commissioners or by the Secretary upon approval of the Commissioners. OAC 165:5–1–6(c).[2]

**2.** The order itself could give another effective date, if so stated in the order, but the April 8,

This means the effective date of the order was April 8, 2008, after Blackburn was no longer lessee of the mineral interests.

¶ 11 Eagle goes on to argue that the effective date of the order is inconsequential, because forced pooling is an extended process and the pooling order merely represents the culmination or establishment of a plan that was developed during the pooling proceeding, citing *Crest Res. and Exploration Corp. v. Corporation Comm'n of the State of Oklahoma,* 1980 OK 133, 617 P.2d 215. However, *Crest* does not support Eagle's position, because it does not obviate the significance of the effective date of the order. It is clear from cases such as *Kuykendall* and *Roberts v. Funk Exploration* that the order itself and the effective date thereof are relevant and vital parts of the pooling process. And the estate created by the Tower–Blackburn lease, and Blackburn's interests which Orca was attempting to force pool, ceased prior to the effective date of the Commission's order. *Ellison v. Skelly Oil Co.,* 1951 OK 122, 244 P.2d 832, 836.

¶ 12 Eagle also cites *Harding & Shelton, Inc. v. Sundown Energy, Inc.,* 2006 OK CIV APP 12, 130 P.3d 776, in support of propositions one and three, arguing that *Harding & Shelton* "instructs that once the Commission's jurisdiction and authority attach to drilling rights held by a lessee in a pooling proceeding, the expiration of the attendant oil and gas lease does *not* remove those drilling rights from the Commission's jurisdiction and authority." (Emphasis in party's original brief in chief.) In *Harding & Shelton,* successor lessees of a previously pooled unit sought to re-pool the formations covered in a 1985 pooling order and to pool previously unpooled formations underlying the same unit, to which the appellate court found:

> The prior pooling order constitutes a final determination of the rights and obligations of any present or future holders of a mineral interest in the affected common source(s) of supply, because to hold otherwise would cast the established rights and

obligations of any holder of a mineral interest in the previously pooled common source(s) into chaos every time there was a change in ownership of mineral or leasehold rights in any pooled formation. Applicants must be held to have obtained their lease(s) subject to the terms of the prior pooling order.

*Harding & Shelton,* 2006 OK CIV APP 12, ¶ 13, 130 P.3d at 779.

¶ 13 Significantly for its application to this case, *Harding & Shelton* also explains that "absent proof of such a change of condition or knowledge of conditions, orders of the Corporation Commission affecting the development of common sources of supply constitute a final adjudication of the rights and obligations of the common source mineral interest holders, and, *once rights become fixed under such orders,* those orders are not subject to a later collateral attack. 52 O.S. § 111; *Eason Oil Co. [v. Howard Eng'g, Inc.],* 1990 OK 101, ¶ 8, 801 P.2d at 713–714." *Id.* at 778–79 (emphasis added). It is the "fixing" of Tower's rights under the 2008 order that did not occur in this case, because the pooling order, which was intended to be "a final determination of the rights and obligations of" Blackburn, did not effectively contain Blackburn because it was not a present holder of the mineral interest when the order issued; and the lease expiration meant the mineral estate reverted back to the lessor, so that the mineral estate the pooling applicant tried to force pool no longer existed when the order was entered. *Ellison v. Skelly,* 244 P.2d at 836; *Hinds v. Phillips Petroleum Co.,* 1979 OK 22, 591 P.2d 697, 699 (a lessee cannot burden the owner's estate beyond the terms of the lease grant). The successor lessees seeking to redo the pooling scheme in *Harding & Shelton* were successors to mineral interest owners and lessees whom the court determined were pooled, or whose rights became "fixed," in the earlier order; this is not the case with respect to Blackburn and Tower.

2008 order at issue had no such provision. *See Kuykendall v. Corporation Comm'n of the State of Oklahoma,* 1979 OK CIV APP 74, 597 P.2d 1221, 1223. Any attempt to establish an alternative

date must be supported by substantial evidence. *Roberts v. Funk Exploration, Inc.,* 1988 OK 66, 764 P.2d 147, 148.

¶ 14 Eagle also cites *Chancellor v. Tenneco Oil Co.,* 1982 OK 122, 653 P.2d 204, overruled on other grounds by *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 1984 OK 52, 687 P.2d 1049, 1056 n. 23, arguing *Chancellor* demonstrates that the Commission's jurisdiction attached to and operated on the drilling rights at the outset of the pooling process. This, Eagle claims, is evidenced by the *Chancellor* court finding that the drilling rights changed ownership by means of a lease entered into after the pooling application was filed, and the pooling order remained effective against the lessee. In *Chancellor,* the lessee acquired a lease from the owner after pooling proceedings had begun, after notice of the proceedings had been filed before the Corporation Commission, and after notice had been sent to the owner from which the lessee acquired his lease. *Chancellor* is not instructive under the current set of facts. In this case, the lease in question was entered into prior to the filing of the pooling application; the owner/lessor was not provided notice either before or during the pooling proceeding; Blackburn's lease estate which the pooling applicant was attempting to force pool no longer existed when the pooling order was issued.

¶ 15 Eagle's reliance on *Harding & Shelton* and *Chancellor* reveal a fundamental mistake in Eagle's argument, in that Eagle fails to make a distinction between the following: a) the conveyance of a leasehold estate from owner (lessor) of the estate to a lessee, as occurred in *Chancellor,* b) the transfer or conveyance that occurs between a lessee and the lessee's successor or assignee to the lease, as occurred in *Harding & Shelton,* and c) the cessation or termination of a lease that occurs between the owner and the lessee when the lease expires and ceases to exist, as occurred in this case. The estate created by the lease between Tower and Blackburn ceased to exist by its own terms on March 27, 2008 and full ownership of the estate was restored to Tower. *Ellison v. Skelly,* 244 P.2d at 836. The pooling applicant's attempt to burden the owner's (Tower) estate beyond the terms of the lease grant is misplaced. *Hinds,* 591 P.2d at 699 (a lessee cannot burden the owner's estate beyond the terms of the lease grant). When the lease

estate ceased prior to the Commission's order, the pooling applicant could not bootstrap its pooling efforts against Blackburn and impose those efforts directly onto Tower.

¶ 16 Eagle's remaining proposition of error claims the pooling applicant's failure to name Tower as a respondent in the 2008 pooling process, failure to give Tower notice of the pooling application and proceedings, and failure to secure Tower's inclusion in the 2008 pooling order itself is not fatal to its position in this case. Eagle claims the notice to Blackburn was effective against Tower, and Tower knew of the pooling process anyway, even alleging Tower acted through or in conjunction with Blackburn during the pooling proceeding.

¶ 17 Title 52 O.S. Supp.2007 § 87.1(e) provides as follows with respect to notice to be given mineral interest owners in the course of a forced pooling proceeding:

*The applicant shall give all the owners whose addresses are known or could be known through the exercise of due diligence at least fifteen (15) days' notice by mail, return receipt requested. The applicant shall also give notice by one publication,* at least fifteen (15) days prior to the hearing, in some newspaper of general circulation published in Oklahoma County, and by one publication, at least fifteen (15) days prior to the date of the hearing, in some newspaper published in the county, or in each county, if there be more than one, in which the lands embraced within the spacing unit are situated. The applicant shall file proof of publication and an affidavit of mailing with the Commission prior to the hearing. *All orders requiring such pooling shall be made after notice and hearing,* and shall be upon such terms and conditions as are just and reasonable and will afford to the owner of such tract in the unit the opportunity to recover or receive without unnecessary expense his just and fair share of the oil and gas.

52 O.S. Supp.2007 § 87.1(e) (emphasis added).

¶ 18 Section 87.1(e) makes multiple references to notice that is required to be given by a pooling applicant in order to obtain a

pooling order upon owners' mineral interests in a designated pooling area: 1) "**shall** give all the owners whose addresses are known or could be known through the exercise of due diligence at least fifteen (15) days' notice by mail," 2) "[t]he applicant **shall** file proof of publication and an affidavit of mailing with the Commission prior to the hearing[,]" 3) "All orders requiring such pooling **shall** be made after notice and hearing[.]"

■ ¶ 19 "The use of 'shall' by the Legislature is normally considered as a legislative mandate equivalent to the term 'must', requiring interpretation as a command." *Minie v. Hudson*, 1997 OK 26, 934 P.2d 1082, 1086. In fact, the Oklahoma Supreme Court held that a forced pooling order of the Corporation Commission did not successfully pool the mineral interests of certain lessors and their heirs who had not been given proper notice. *James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, 847 P.2d 333, 339–40 (mineral interest owners who were served only by publication were deemed not properly served and their interests not force pooled, because pooling applicant had the ability to determine the addresses of the mineral interest owners and did not give the required personal notice). *James Energy* is consistent with a legislative construction of the word "shall" as a command, demanding mandatory or imperative compliance. Furthermore, when the Corporation Commission acts in an adjudicative capacity, the agency is subject to due process requirements "not dissimilar" to those that apply to judicial bodies, including notice requirements. *Mullins v. Ward*, 1985 OK 109, 712 P.2d 55, 60.

¶ 20 Because the lease estate ceased to exist when the lease expired, it was unlike a conveyance where the estate continued and notice might be imputed to the party receiving the lease conveyance, as occurred in *Chancellor*, 653 P.2d at 205–06. Cessation of the lease and the termination of the lessee's estate when the lease expires does not burden the owner's (lessor) estate in the same way, the lessee cannot burden the owner's estate beyond the terms of the grant. *Ellison v. Skelly*, 244 P.2d at 836; *Hinds v. Phillips Petroleum*, 591 P.2d at 699. For this reason, upon expiration of the Tower-

Blackburn lease prior to the issuance of the pooling order, clean up pooling should have been implemented with respect to Tower, so that the "present owner" of the mineral interest (Tower) was included in the pooling order. The Commission found the lessor does not "step into the shoes of the lessee." We agree.

## II. Claremont Corporation

¶ 21 Appellant/Claremont's first proposition of error alleges *Harding & Shelton, Inc. v. Sundown Energy, Inc.*, 2006 OK CIV APP 12, 130 P.3d 776 controls in this case and supports Appellant's position that the Corporation Commission's jurisdiction attached to the Blackburn leased mineral rights *in rem*, so that the Blackburn mineral rights reverted to Tower subject to the terms of the pooling order. Appellant's second proposition of error asserts the Commission's determination that the 2008 order did not pool the mineral interests of Tower, and by succession Thistle, is an impermissible abdication of the Commission's jurisdiction and authority to force pool. Appellant's third proposition alleges the Commission's decision offends equity. Fourth, Appellant argues the decision diminishes drilling funds for the entire Oklahoma oil and gas industry. Finally, Appellant asserts the Commission erred in its determination that terms within the lease controlled, though the pooling order specifically prohibited inclusion and adoption of such terms.

¶ 22 With respect to Claremont's first proposition of error, wherein Claremont argues *Harding & Shelton* controls and applies in this case, we examined this issue above in the course of addressing Eagle Energy's first proposition of error. Similarly, we find, when the lease estate ceased prior to the Commission's order, the pooling applicant could not bootstrap its pooling efforts against Blackburn and impose those efforts directly onto Tower.

¶ 23 Appellant's second proposition of error alleges the Corporation Commission abdicated its jurisdiction and authority, to the detriment of forced pooling across Oklahoma. Appellant argues the Commission maintains ongoing authority from the outset of the

pooling proceeding, and the Commission's decision in this case fails to acknowledge or take advantage of that continuing authority. *Nilsen v. Ports of Call Oil Co.*, 1985 OK 104, 711 P.2d 98, 103. Appellant also argues the state's police power attached to Blackburn's drilling rights at the outset of the pooling proceedings, so that any contract between lessor and lessee does not control the pooling, if the Commission has approved an order for the spacing unit.

¶ 24 Appellant's argument here is misplaced. There is no indication in the record that the Corporation Commission impermissibly gave up jurisdictional authority at the point at which the Tower–Blackburn lease expired. The record indicates the pooling applicant may have had opportunities to obtain an order that included Tower, including requesting an extension to conduct clean-up pooling, such clean-up may have then allowed the applicant to give Tower notice under the terms of the statute, 52 O.S. Supp.2007 § 87.1(e). Failure to pool Tower's mineral interests in the April 2008 order did not result from an impermissible abdication of authority on the part of the Corporation Commission, but was rather an oversight of those seeking the forced pooling.

 ¶ 25 Appellant's third proposition of error alleges the Commission's order offends equity. Appellant alleges in its brief in chief that the Commission's decision finding Tower's interests were not pooled by the April 2008 order will result in "chaos" and would allow Tower and Thistle to be rewarded for "years" of silence, taking "an unreasonable period of time coming forth to assert ownership rights[.]" *Thompson v. Johnson–Kemnitz Drilling Co.*, 1943 OK 316, 145 P.2d 422, 425.[3]

¶ 26 In support of its equity claim, Appellant cites *Thompson v. Johnson–Kemnitz Drilling* and *McClain v. Ricks Exploration Co.*, 1994 OK CIV APP 76, 894 P.2d 422, 431. In *McClain*, lessors sought to have their leases cancelled and the mineral interest ownerships be deemed to belong to the lessors and not the lessees. The court found the lessors waited too long to speak up to assert their alleged ownership. *Id.* at 431.[4] The lessors in *McClain* waited over a year to assert their alleged ownership, with one of the lessors asserting participation in the profitable well a year after the well was started and over two years after the start of the first, less profitable, well. *Id.* at 430. The *Thompson* court reached a similar conclusion, upon a delay of almost a decade in the defendant lessees being brought into the litigation.

¶ 27 Appellant claims Tower remained silent "for years" in order to avoid the pooling order. However, this characterization is not supported by the record. Tower and Blackburn entered into the lease agreement months before the pooling application was filed and the terms of the Tower–Blackburn lease, including the lease expiration date, were completely available to the pooling applicant during the entire pooling process. And Tower filed an affidavit of notice in September 2008, only five months after the April 2008 Commission order, in which Tow-

---

3. "Equity will not aid a party who, with full knowledge of the facts, and without risk to himself, stands by an unreasonable length of time and sees another assume all the risks in an uncertain venture in which said party might have shared, and, after success of the venture, seeks to share in the benefits thereof. That rule applies as between parties entitled to share in the production of oil. *Parker v. Ryan*, 143 Okl. 187, 287 P. 1006, 1008. When considering a similar claim the court in the latter case held: 'The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.'"
*Thompson*, 145 P.2d at 425.

4. "Plaintiffs are estopped to have their leases cancelled. Similar to the facts in *Thompson v. Johnson–Kemnitz Drilling Co.*, 193 Okla. 507, 145 P.2d 422 (1943), Plaintiffs knew of the drilling of the Elliott well, witnessed production and sale of the gas, and never made demand on the operator for release of their leases. Nor is there evidence Plaintiffs offered to pay their proportionate part of the drilling costs of the Elliott to the operator. Instead, they sat back and allowed Sanguine and Ricks to take all the risks on the Elliott and after the venture proved profitable, asserted a working interest in the well. As stated in *Thompson*, Plaintiffs have waited too long. They were under a duty to speak within a reasonable time."
*McClain*, 894 P.2d at 431.

er asserted it was not a respondent to the pooling proceeding and was not subject to the pooling order. Production of the unit well began in August 2008, seven weeks prior to Tower filing its affidavit of notice. Appellant's allegation that Tower held back for an unreasonable "two years," while the operator assumed all the risks of drilling, is not an accurate presentation of the record and *McClain* and *Thompson* are not analogous to this case.

¶ 28 Appellant's fourth proposition of error alleges the Commission's decision will diminish drilling funds for the entire industry in Oklahoma, citing *Anson Corp. v. Corporation Comm'n of the State of Oklahoma,* 1992 OK CIV APP 37, 839 P.2d 676, 680.[5] This is an extension of Appellant's equity argument, asserting Tower manipulated the pooling process so as to await the profits and then seek to assert its ownership outside the pooling order once profits were assured. As stated previously, Claremont has not supported its allegations of an unreasonable delay on the part of Tower with the record provided.

¶ 29 Appellant's final proposition of error alleges the Commission erred in permitting terms of the Tower–Blackburn lease to control, though the pooling order prohibited inclusion or adoption of the lease terms. Appellant's argument in this respect claims Blackburn's lease was perpetuated by commencement of the initial well, which did not begin until after the lease expired. The language Claremont relies on is as follows:

> SPECIAL PROVISION: The Commission finds that the Oil and Gas Lease by and between Tower Royalty Company, LLC and Blackburn Properties, Inc., dated the 27th day of March, 2007, covering approximately 157 mineral acres in the Southwest Quarter of Section 30, Township 15 North, Range 4 East, Lincoln County, Oklahoma, did not constitute an arm's length transaction and that this pooling order shall be issued denying the (1) inclusion of the Oil and Gas Lease Provisions as found in said lease; (2) the no cash bonus with an (sic) 1/4 total excess royalty alternative for the rights in lieu of participation; and (3) the option to establish a $1.00 per acre bonus consideration in return for the delivery of a 75% net revenue interest.

¶ 30 The record reveals the Corporation Commission included the "special provision" to address the fact that the Tower–Blackburn lease was not an arm's length transaction, and the lack of arm's length dealing is specifically stated within the special provision itself. There is nothing in the 2008 order or the special provision that supports Appellant's argument that the habendum clause or the commencement of operations provisions of the lease were disavowed by the April 2008 order. For this reason, the commencement of operations after the lease expired did nothing to perpetuate the lease term and the lease expired on March 27, 2008, as the parties so stipulated.[6]

¶ 31 Appellant argues any reevaluation of the meaning of this clause is prohibited as a collateral attack on the 2008 order. However, the Corporation Commission may clarify a prior order, which was the nature of Appellant's request when the current matter was removed to the Corporation Commission in 2010, after Tower and Thistle filed their quiet title action in Lincoln County. *Kaneb Prod. Co. v. GHK Exploration Co.,* 1989 OK 11, 769 P.2d 1388, 1391 ("The Corporation Commission may clarify or supplement its

---

5. "Due to the inherently risky nature of oil and gas exploration, coupled with the great need for advance funding, incentives must be provided to investors and mineral owners. The interests of those individuals who play by the rules are detrimentally affected when other parties are allowed to manipulate the law to achieve a greater return with no risk. The long term effect could be a greater reluctance on the part of honest investors to participate in drilling funds and a larger number of lessors who always elect to take the bonus. The only remaining investors would be the "sophisticated" ones who find ways to circumvent the pooling order. The Commission's Order thus has the long term effect of diminishing drilling funds for the entire industry."

*Anson,* 839 P.2d at 680.

6. Claremont Corporation stipulated to the fact the lease expired on March 27, 2008. *Bonner v. Oklahoma Rock Corp.,* 1993 OK 131, 863 P.2d 1176, 1181 n. 15 ("Stipulations are solemn admissions. Unless a court, upon request, finds a tenable legal ground for relieving one from the legal effect of a stipulation, such judicial admissions are generally binding and conclusive on the parties as well as on the court.").

orders but it may not collaterally attack a prior Commission order."). Claremont has provided no authority, and we have found none, in support of the proposition that the Commission order revived and then perpetuated a lease that expired prior to the issuance of the Commission's order. No relief is warranted upon this proposition of error.

### III. Pomona Production, L.L.C.

¶ 32 Appellant/Pomona asserts three propositions of error on appeal. First, Appellant alleges the jurisdiction of the Corporation Commission attached to the working interests when Orca, the pooling applicant, first obtained service on Blackburn and the date of the pooling order is not fatal to pooling Tower's interests, because Blackburn was the lessee when proceedings began. Appellant's second proposition of error alleges Tower and Thistle's claims are an impermissible collateral attack on the Commission's 2008 order, depriving Pomona and others of vested property rights. Finally, Appellant argues it was error for the Commission to find the Tower–Blackburn lease expired on March 27, 2008.

¶ 33 Appellant argues in its first proposition that *Chancellor v. Tenneco Oil, Co.* and *Harding & Shelton, Inc. v. Sundown Energy, Inc.*, demonstrate the Corporation Commission's jurisdiction over the working interests in the spacing unit attached at the beginning of the pooling process and not at the point of the order. With respect to Tower and Blackburn, this argument depends on the supposition that Tower holds the same interest Blackburn held during the term of the lease, which is not the case, because the leasehold interest Blackburn held when it was served for the pooling proceeding was not transferred to Tower, but rather ceased to exist when the lease

expired. *Ellison v. Skelly Oil Co.*, 1951 OK 122, 244 P.2d 832, 836; *Hinds v. Phillips Petroleum Co.*, 1979 OK 22, 591 P.2d 697, 699. This proposition relies on the same authority Eagle Energy cites in support of its first proposition of error. Having addressed these arguments in examining Eagle Energy's appeal, we reach the same conclusion here; when the lease estate ceased prior to the Commission's order, the pooling applicant could not bootstrap its pooling efforts against Blackburn and impose those efforts directly onto Tower.

¶ 34 Pomona's second proposition of error argues it held vested property rights as a result of the April 2008 pooling order and those rights cannot be upended by an impermissible collateral attack on the Commission's order. 52 O.S. § 111.[7] This argument accuses the Commission of modifying or changing its 2008 pooling order in a manner prohibited by § 111 and caselaw. *Union Texas Petroleum v. Corporation Comm'n of the State of Oklahoma*, 1981 OK 86, 651 P.2d 652, 659. However, Appellant requested the Commission clarify its 2008 pooling order after Tower and Thistle's quiet title action was filed, to clarify whether Blackburn's interest, and then Tower's interest, in the spacing unit was pooled by the April 8, 2008 order. Pomona's attempt to now argue the Commission's order is an impermissible modification simply because the order was not clarified in the manner Pomona sought is without merit. In answering Appellant's question, the Commission acted within its authority to clarify the 2008 order.

¶ 35 Appellant's final proposition of error alleges the Tower–Blackburn lease did not expire on March 27, 2008, prior to the issuance of the Commission's order and correspondingly, the Blackburn leasehold inter-

7. 52 O.S. § 111:

No collateral attack shall be allowed upon orders, rules and regulations of the Commission made hereunder, but the sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court. On appeal every such order, rule or regulation shall be regarded as prima facie, valid, reasonable and just. No court of this state except the Supreme Court, and if only on appeal, as herein provided, shall have jurisdiction to review, reverse, annul, modify or correct any order, rule, or regulation of the Commission within the general scope of its authority herein or to enjoin, restrain or suspend execution or operation thereof, provided that writs of mandamus and prohibition shall lie from the Supreme Court to the Commission in all cases where such writs, respectively, would under like circumstances lie to any inferior court or officer.

est was a present and ongoing concern when the order issued, making it valid as to Blackburn and any entity that comes after Blackburn. In support of this proposition, Pomona asserts Special Energy commenced well operations in December 2007 and mechanical problems intervened preventing actual drilling operations prior to the March 27, 2008 expiration of the lease.

¶ 36 This proposition is without merit. Pomona stipulated to the fact the Tower–Blackburn lease expired on March 27, 2008 and there was no rig actually drilling or capable of drilling the unit well at the time the lease expired. Stipulations are solemn admissions and a party to the stipulation is not relieved of the stipulation lightly. *Bonner v. Oklahoma Rock Corp.*, 1993 OK 131, 863 P.2d 1176, 1181 n. 15 ("Stipulations are solemn admissions. Unless a court, upon request, finds a tenable legal ground for relieving one from the legal effect of a stipulation, such judicial admissions are generally binding and conclusive on the parties as well as on the court.").

¶ 37 Pomona also argues the pooling order vitiates the commence production and habendum clauses contained in the Tower–Blackburn lease. The record does not support this position. The provision Pomona claims denies inclusion of the Tower–Blackburn lease terms was addressed to the issue of fair market value and did not repudiate the entire lease. The lease provision requiring a drilling rig both capable of drilling and actually drilling in order to extend the primary term of the lease was not repudiated by the pooling order. Further, Appellant has cited no authority for the proposition that a Commission order issued after the expiration of a lease can reach into the past and extend the term of the already expired leasehold estate.

¶ 38 The order of the Oklahoma Corporation Commission, denying Appellants' motions to reconsider the Commission's finding that "Pooling order No. 552381 entered by the Commission on April 8, 2008, does not pool or otherwise affect the rights, titles, interests or obligations of either Tower Royalty Company, L.L.C. or Thistle Royalty Company, L.L.C. with respect to any mineral interests they own" in the disputed pooling area, is AFFIRMED.

HETHERINGTON, V.C.J., and BUETTNER, J., concur.