PANNELL et al. v. FARMERS UNION CO-OP. GIN ASS'N et al.

No. 31010. June 22, 1943.

*138 P. 2d 817.*

Hatcher & Bond, of Chickasha, for plaintiffs in error.

Howell & DeBois, L. V. Reid, Floyd Green, William M. Franklin, all of Oklahoma 'City, and Marion R. Wells, of Sterling, for defendants in error.

BAYLESS, J. Ed Pannell and Chickasha Cotton Oil Company, the co-owners and operators of two cotton gins at Sterling, Okla., appeal from an order of the Corporation Commission granting a license to the Farmers Co-Operative Gin Association of Sterling, Okla., to maintain and operate a cotton gin for the purpose of ginning seed cotton at Sterling, Okla.

It appears from the record that the association is a nonprofit organization, organized at Sterling, for the purpose of operating a cotton gin on a mutual nonprofit co-operative basis, pursuant to the statutes of Oklahoma, with about 120 members. The reason for desiring to establish and maintain their own gin is given in the application to the commission as follows:

"Farmers want to gin their own cotton. Lack of competitive market for cotton, cottonseed and feed products produced from cottonseed. Necessity of traveling great distances to reach competitive markets. Absence of modern equipment to receive cotton or properly gin it. Cotton producers not securing maximum price for seed and lint and want to gin and market their own cotton and seed and receive maximum price paid by surrounding market."

It is admitted that the plaintiffs in error own the two gins at Sterling. The evidence introduced by the association tended to show that because of the joint ownership of the two gins at Sterling by the plaintiffs in error there was an absence of competition and as a direct result of this the market price for cotton and cottonseed sold by the farmers and for the feed products from cottonseed bought by the farmers was out of line with the prices for such products in the surrounding country to the disadvantage of the farmers in the vicinity of Sterling. It would serve no useful purpose to quote the testimony of the witnesses introduced by association. It is sufficient to say that the testimony given by these witnesses, who lived in the vicinity that ordinarily would be served by gins at Sterling, tended to show: (1) Almost constantly a market price for the sale of cotton and cottonseed at Sterling lower than that of surrounding points; (2) some slight difference in charges for hauling to compress; and (3) a higher price to the farmers for the purchase of cottonseed meal. The testimony of these witnesses was that they and others habitually hauled their cotton to other markets in order to obtain better prices or better deals in the trade of cottonseed for cotton meal and that it was an added inconvenience to do this. We observe that the evidence introduced by the plaintiffs in error strongly contradicted the evidence of the association in every particular, and the plaintiffs in error urge throughout their brief that their testimony completely refutes the testimony of the association.

The first contention urged by plaintiffs in error is that the commission erred in failing to sustain their demurrer to the evidence of the association and in refusing to sustain their motion to deny the application for the license at the close of all of the evidence "for the reason that the evidence fails to show that additional ginning facilities, conveniences, and services are needed at Sterling, Okla., to serve the public or that an additional gin there is a needed utility."

Plaintiffs in error preface their argument on this point by calling our attention to article 9, sec. 20, Constitution of Oklahoma, as amended by Senate Bill 61, sec. 1, Session Laws 1941. Prior to the enactment of Senate Bill 61, Session Laws 1941, this court was required, on appeal, to regard the action of the Corporation Commission appealed from as prima facie just, reasonable, and correct whereas by the provisions of Senate Bill 61, sec. 1, supra, this court is now obliged on appeals not involving constitutional issues to determine ". . . whether the findings and conclusions of the commission are sustained by the law and substantial evidence. . ." Plaintiffs in error contend that by reason of this change in our fundamental law the order of the commission granting the association a license to establish this gin reaches here for review without any mandatory presumption with respect to its justness or correctness, and that it is necessary for this court to examine the record to ascertain whether the order is sustained by substantial evidence. Following this, plaintiffs in error indulge in an extended summary and review and comparison of the evidence introduced by the respective parties below. It is our opinion, however, that the purport of this lengthy review of the record is to induce a weighing of the evidence to see whether the order of the commission is in accord with the weight of evidence, and this is a thing apart from determining whether the order is sustained by substantial evidence.

Both parties agree that substantial evidence means something more than a "scintilla of evidence" and means evi-

dence that possesses something of substance and of relevant consequence and such that carries with it fitness to induce conviction. Both parties agree in citing cases that say that substantial evidence is such evidence that reasonable men may fairly differ whether it establishes a case. The cases cited by plaintiffs in error, N.L.R.B. v. Abell, 97 Fed. 2d 951, wherein it is said ". . . substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; . . ." and N.L.R.B. v. Union Pacific Stages, 99 Fed. 2d 153, wherein it is said, ". . . It implies clarity of proof which induces conviction and makes an impression on reason," well state the rule upon which the parties agree.

It is our opinion that the determination of whether there is substantial evidence to establish or support an order made by the commission does not require that the evidence introduced by all of the parties be weighed, but only that that evidence in the record tending to support the order entered be considered to determine whether it meets the test stated above. In other words, we are to determine whether the evidence introduced by the association implies such clarity as proof that it did induce the conviction that the application should be granted, or furnished a substantial basis of fact from which the issue tendered could be reasonably resolved.

Viewed in this light, we are of the opinion that the evidence in the record reaches the state that requires it to be considered substantial evidence supporting the order made by the commission.

The second contention urged by plaintiffs in error is that the evidence introduced by the association wholly failed to place association within the rule announced in Southwestern Cotton Oil Co. v. Farmers Union Co-Operative Gin, 165 Okla. 31, 24 P. 2d 658; referred to as the "Pauls Valley Case." The argument made in support of this contention consists of an analysis of the facts introduced in evidence in that case and a review of the discussion indulged by this court in the determination of the case based upon the facts introduced in evidence; and particular attention is paid to what is considered four controlling factors. The import of their argument on this point is that the controlling factors mentioned in that case amount to the statement of a rigid rule making it necessary that all similar applications bring themselves wholly within the factors announced or fail of the purpose. We do not construe that case to mean this. There are many factors which might induce people to apply for permission to establish and operate a gin despite existing facilities, and it is observed that the facts in some cases would support some of these factors and in other cases would not, and in the final analysis these individual applications must be judged upon their individual merits and granted or denied accordingly. It is said that association has failed to show by substantial evidence that the price paid at other points for cotton was always higher than at Sterling. The evidence introduced by association does not show that these prices were "always" higher than at Sterling, but the evidence is sufficient to amount to substantial evidence of such a habitual difference as to justify the farmers of that community feeling that they were being forced to market their cotton at Sterling at a disadvantage, because of the lack of competition, or to haul it elsewhere. The same contention is made, and we make the same answer thereto, with respect to the prices that the gin at Sterling paid for cottonseed. It is said that the association failed to show that if a patron did not elect to sell his cottonseed to the gin at Sterling, he must receive them and haul them away. We doubt that this makes any particular difference, for it is largely a matter of storage. The ability to store the cottonseed and wait for a better market is an additional facility that exists in the instance before us that seems not to have existed in the Pauls Valley Case. Alone, it is not sufficient to overcome the order entered. It is said that the association

failed to prove that cotton which should normally be ginned at Sterling was hauled to other points for ginning. It is to be noted that the evidence of the association, consisting of the testimony of individual farmers, was that they and others would haul their cotton elsewhere because of dissatisfaction with prices at Sterling. They point out in their argument in support of this contention that their evidence shows that over a period of years the figures for cotton ginned at Sterling and the surrounding points indicate that Sterling gins held their own in the matter of cotton ginned, thereby implying that there was not enough difference in prices to cause a general movement of cotton to other points to be ginned. If we had to hold that the commission's ruling on this point was erroneous, it would necessitate our saying that the weight of the evidence favored the showing made by plaintiffs in error and overcame the showing made by association. We cannot do this, for our duty requires us to limit our consideration to whether the evidence introduced by association amounts to substantial evidence. In addition to this, even though the Sterling gins may have received what might be considered their share of the cotton in comparison with the gins of surrounding parties, when 120 farmers of that community desire to establish a gin on a co-operative basis and introduce evidence such as was introduced here, a keen sense of dissatisfaction with the market offered them is indicated and may be regarded as their method of procuring facilities that will enable them to have their cotton ginned because of its convenient geographical proximity. While the association may not have shown in this case every factor that was shown in the Pauls Valley Case, we feel, on the other hand, that it has shown other factors of equal importance, and the order in this case is entitled to stand on its own merits and not because of its similarity or lack of similarity to the so-called Pauls Valley Case. It is argued also that association's evidence wholly fails to show a lack of facilities at Sterling; and fails to show any need for an additional gin to care for the cotton raised in that vicinity. In the application filed there was a charge made that inadequate facilities at Sterling created a state of inconvenience. But our review of the record indicates that there is a lack of evidence on this issue. Thus we conclude that, insofar as the amount of cotton to be ginned is concerned, the existing facilities are adequate. But adequacy of facilities is not controlling. The purpose of nearly all of association's proof was to show a discrimination in prices arising from a lack of competition because the Sterling gins were owned and operated by the same owners. As a matter of law this could create a need for another gin with as much reason as any factor. As great harm could be done the cotton farmers of the vicinity by denying them the market price for what they sell and buy from gins as by inconvenience arising from inadequacy of facilities.

The third contention made is that the rule laid down in the Pauls Valley Case should be overruled. The argument in support of this contention is based upon a citation of 17 O. S. 1941 §§ 46 and 152, and article 9, §§ 18 and 19 of the Constitution of Oklahoma, giving the commission the power and authority to establish rules and regulations and to exercise the power to punish as for contempt for violations of such rules and regulations. Vogel v. Corporation Commission, 190 Okla. 156, 121 P. 2d 586. We think it is fatal to this contention that the power of the commission does not reach to the point of controlling prices.

The judgment of the trial court is affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, WELCH, HURST, and ARNOLD, JJ., concur. OSBORN and DAVISON, JJ., absent.