CHICAGO, R. I. & P. RY. CO. v. VOGEL et al.

No. 31518.   March 6, 1945.

*156 P. 2d 620.*

W. R. Bleakmore and Jas. E. Grigsby, both of Oklahoma City, for plaintiff in error.

Floyd Green and L. V. Reid, for Corporation Commission, and Jas. A. Rinehart, of El Reno, for defendants in error.

CORN, J.   This is a proceeding of the board of education of consolidated district No. 57, Union City, Canadian county, Okla., asking the Corporation Commission for an order requiring the Chicago, Rock Island & Pacific Railway Company to provide adequate protection for the traveling public at the intersection of said railway's line with First street, in the town of Union City, and especially for the protection of children conveyed by school buses, which buses cross said railway.

The finding and order of the Commission in part is as follows, to wit:

"The Commission heard the testimony of several witnesses for the School Board urging that some kind of protection be provided at said crossing. The Railway Company also introduced evidence, claiming that the crossing was not hazardous and that no additional protection was reasonably necessary.

"The Commission finds from the evidence that the town of Union City is on a main line of said railway, operating north and south through Oklahoma, and that the crossing in controversy here is situated as above stated; that said First street is the most generally used street in the town, and is a public street within the meaning of the statutes of Oklahoma, and also a part of the public highway coming from the east and passing through the town and serves as an access between Highway U. S. 81 and the main business district.

"The town has a population of 350 people, and has a bank, a post office,

telephone exchange, drug store, barber shop, two general merchandise stores, one lumber yard and one elevator. These business concerns are west of this highway crossing; and there are three filling stations at the intersection of U. S. Highway 81 and First street.

"The Union City Public School is situated west of this crossing, has 170 pupils and nine teachers. Three loaded school buses transport students to this school, moving west over this crossing in the morning, and the three return loaded over it after the school day is over. The school hours are not the same for all students.

"The elevation of this railway track is about five feet above level of the public road and street immediately both east and west of the crossing. Buildings to the north situated near the track add to the hazards of the crossing. The proof shows that there have been several accidents at this crossing, one fatal, in recent years."

The proof further shows that four regular passenger trains operate daily over this road, and regular and irregular freight trains, as well as regular troop trains and their equipment, move daily over said track. Some of the regular passenger trains move at a great speed, and because of the present congested railway traffic these trains are sometimes unable to maintain their schedule, thus adding to the hazards of the situation at the crossing.

"The Commission finds from the evidence that the Railway Company should furnish protection for those using this crossing, and especially for the public school children who are transported by buses; that due to war priorities on materials, a grade separation or mechanical warning devices are not procurable, and that, therefore, a watchman should be provided by the Railway Company at this crossing, on school days from 7:30 o'clock A. M. to 9:30 o'clock, A. M., and from 3:00 o'clock P. M. to 5:00 o'clock P. M."

The defendant contends the order of the Commission is not sustained by the evidence, is arbitrary, unreasonable and contrary to law, and in support of his argument cites the following sections of Title 70 of our Statutes (O.S. 1941):

"Section 1195i. The driver of any vehicle being used in transporting pupils to or from school is hereby required to come to a full stop before crossing or driving onto any designated State and/or Federal highway or any steam or electric railway track. Such driver, before proceeding across a railway track shall go to the center of such track and ascertain that there is no train or other vehicle approaching such crossing and that it is safe for him to proceed; or some competent person may be delegated by him to go onto such track and indicate to him by proper signal whether or not it is safe for him to cross.

"Section 1195j. Any driver of such vehicle violating Section 10 of this Act shall be guilty of a misdemeanor and upon conviction shall be fined not less than Five ($5.00) Dollars, and not more than One hundred ($100.00) Dollars for each offense, and shall be forthwith discharged and shall be, and is hereby declared to be incompetent to drive any such vehicle."

"There is a presumption in favor of legality and compliance with the law, and against illegality; conversely, there is no presumption in favor of illegality, or violation of statute." 31 C.J.S. p. 769.

And then says the order was predicated upon the presumption, which must have motivated the Commission, that the drivers of school buses would violate a statute that provided absolute protection against accidents at a railroad crossing.

The record reflects that the Commission had before it evidence that the bus drivers did stop and make an inspection as provided by statute before crossing said track, thereby furnishing all the protection possible to the occupants of the buses, but the Commission, being familiar with all the facts and circumstances surrounding this crossing, deemed it necessary for the protection of the children riding in the buses crossing said track that it provide an additional safeguard.

This court has recently decided a case

construing section 20, article 9, of the Constitution, Pannell et al. v. Farmers Union Co-op. Gin Ass'n et al., 192 Okla. 652, 138 P. 2d 817; therein we said:

"Under article 9, sec. 20, Constitution of Oklahoma, as amended by Senate Bill 61, S.L. 1941, on appeal from the Corporation Commission this court is required to review the evidence, and must sustain the order appealed from if it is supported by substantial evidence."

"Both parties agree that substantial evidence means something more than a 'scintilla of evidence' and means evidence that possesses something of substance and of relevant consequence and such that carries with it fitness to induce conviction. Both parties agree in citing cases that say that substantial evidence is such evidence that reasonable men may fairly differ whether it establishes a case. The cases cited by plaintiffs in error, N. L. R. B. v. Abell, 97 Fed. 2d 951, wherein it is said '. . . substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; . . .' and N. L. R. B. v. Union Pacific Stage, 99 Fed. 2d 153, wherein it is said '. . . It implies clarity of proof which induces conviction and makes an impression on reason,' well state the rule upon which the parties agree.

"It is our opinion that the determination of whether there is substantial evidence to establish or support an order made by the commission does not require that the evidence introduced by all of the parties be weighed, but only that that evidence in the record tending to support the order entered be considered to determine whether it meets the test stated above. In other words, we are to determine whether the evidence introduced by the association implies such clarity as proof that it did induce the conviction that the application should be granted, or furnished a substantial basis of fact from which the issue tendered could be reasonably resolved. . . ."

Order of Commission affirmed.

HURST, V.C.J., and OSBORN, BAYLESS, and DAVISON, JJ., concur.