**MUSTANG PRODUCTION COMPANY,
Nelson Enterprises, Inc., and Mary B.
Brown, Appellants,**

**v.**

**CORPORATION COMMISSION OF
THE STATE OF OKLAHOMA and
Jessie Hopper, Appellees.**

**No. 66047.**

Supreme Court of Oklahoma.

March 7, 1989.

Rehearing Denied April 18, 1989.

Elizabeth M. Ellis, Oklahoma City, for appellant Mustang Production Co.

Joseph R. Dancy, Oklahoma City, for appellant Mary B. Brown.

Dan Nelson, Oklahoma City, for appellant Nelson Enterprises, Inc.

Daniel S. Evans, Stephen L. Thompson, Oklahoma City, for appellee Jessie Hopper.

Leslie Wilson Pepper, Oklahoma City, for Oklahoma Corp. Com'n.

SIMMS, Justice:

Appeal from Order No. 292454 of the Oklahoma Corporation Commission denying appellant Mustang Production Company's request for increased density well in Cause CD No. 122434, and granting the request of appellee Hopper to respace the Morrow and Chester formations underlying Section 15 in Township 20 North, Range 18

West, Woodward County, Oklahoma, from 640 acre drilling and spacing units for gas, to 80 acre drilling and spacing units for oil production in Cause CD No. 119367.

In 1965, the Corporation Commission entered Order No. 61107, spacing the Chester formation underlying Section 15, T20N, R18W, in Woodward County, Oklahoma, as a 640 acre common source of supply for the production of gas. In 1976, the Commission entered Order No. 122032, similarly spacing the Morrow formation under that section as a common source of supply. Eight years later, on January 9, 1984, Old Dominion Exploration Company succeeded in pooling all the mineral interests in Section 15 by Order No. 251941, entered January 16, 1984. Shortly thereafter the Hopper Well was drilled in the SE ¼ of the NE ¼ of Section 15 and completed as an oil producer from the Morrow "A" and Chester formations in September, 1984.

Jessie Hopper, appellee, as owner of the minerals underlying the NE ¼ of Sec. 15, filed an application in CD# 119367 to despace, inter alia, the Morrow "A" and Chester formations beneath Section 15 from a 640 acre drilling and spacing unit to 80 acre "laydown" drilling and spacing units, on November 7, 1981. Later, on December 19, 1984, Mustang Production Company, as operator of the Hopper Well, filed its application in CD No. 122434, for an increased density well for Section 15. Mary B. Brown, as owner of the minerals underlying the SW ¼ of Sec. 15, filed her brief in opposition to the Hopper application in CD No. 119367 on January 28, 1985. The causes were consolidated for hearing held May 5, 14, and 18, 1985. Also appearing in opposition to the Hopper application (CD No. 119367) and in support of the Mustang application (CD No. 122434) were Nelson Enterprises, Inc., lessees of minerals and participants in the Hopper Well.

The hearing officer filed her initial report on August 8, 1985, recommending that both applications be denied. Exceptions were taken and the cause was again heard by the appellate hearing officer who also recommended that both applications be denied. Exceptions were again taken, and on January 31, 1986, the Corporation Commission en banc entered Order No. 292454 granting the Hopper Application. The Chester and Morrow "A" formations in Section 15 were respaced to 80 acre "laydown" drilling and spacing units; the Commission further denied Hopper's request that Order No. 292454 be backdated to the date the application to despace in CD No. 119367 had been filed.

Mustang Production Company, as operator of the Hopper Well, together with Nelson Enterprises, Inc., and Mary B. Brown, as owners of mineral interests underlying Sec. 15, T20N, R.18W, I.M.; bring this appeal from Despacing Order No. 292454. Appellee, Jessie Hopper, presents a counter-petition in error to Order No. 292454 insofar as that order denied the appellee's request that the order be backdated to the date the application in CD No. 119367 was filed. For the sake of clarity, the appellants will be referred to collectively herein as "Mustang" or "appellants". Appellee Hopper will be referred to simply as "appellee".

## I.

The appellants argue five separate propositions of error in their briefs, with various sub-propositions to each. After careful review of the arguments and authorities presented, we are of the opinion that these various assignments of error can be more succinctly treated in two distinct questions. First, whether the Commission erred in refusing to backdate Order No. 292454 to the date the original application was filed; and, Second, whether the Commission Order No. 292454 is supported by facts and testimony in the record.

■ We conclude that the Corporation Commission may properly backdate an order despacing or modifying a prior, valid spacing order. However, we are also forced to conclude that the Commission's Order No. 292454 is not supported by substantial evidence in the record now before us.

## II.

█ The standard to be applied by the Corporation Commission when hearing an application to modify or vacate a prior, valid order is well known in Oklahoma. A prior, valid order may only be modified or vacated upon a showing by an applicant that there has been a change in conditions or a change in knowledge of conditions. *Phillips Petroleum Co. v. Corporation Commission,* Okl., 461 P.2d 597, 599 (1969). The applicant must make this showing by substantial evidence. *Phillips,* supra; *Anderson–Prichard Oil Corp. v. Corporation Commission,* 205 Okl. 672, 241 P.2d 363 (1951); Okla. Const. Art. IX, § 20. Without this showing, any attempt to vacate or modify a prior, valid order constitutes a prohibited collateral attack on that earlier order. *Application of Bennett,* Okl., 353 P.2d 114, 120 (1960).

█ When orders of the Commission are appealed to this Court, our review is limited to ascertaining whether this burden is met by the facts and testimony in the record. *Anderson–Prichard,* supra, 241 P.2d at 368; *Pannell v. Farmers Union Cooperative Gin Ass'n.,* 192 Okl. 652, 138 P.2d 817 (1943). Our statutes confer a presumption upon orders on appeal, that they are valid, reasonable and just. 52 O.S.1981, § 111. When making our determination whether or not an order is based on substantial evidence, we look not only at the evidence tending to support the order, *Yellow Transit Co. v. State,* 198 Okl. 229, 178 P.2d 83 (1947), but also take into account the evidence in the record which fairly detracts from its weight. *Universal Camera Corporation v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *El Paso Natural Gas v. Corporation Commission,* Okl., 640 P.2d 1336, 1338 (1981).

## III.

Appellee first offered the testimony of Dawson Lassiter, a consulting geological engineer. Lassiter initially testified about a well that had been drilled in the SE ¼ of Section 15 subsequent to the spacing order on the Chester formation, but prior to the order spacing the Morrow "A" in that section. That well had been productive of oil only and was abandoned in 1981 after producing nearly 3,000 barrels of oil in its production lifetime. He then stated that the Hopper Well in the S ½ of the NE ¼ of Section 15, drilled subsequent to both spacing orders, had been productive of oil only since its completion. Lassiter went on to testify that it was his professional opinion that the Chester and Morrow "A" formations in Section 15 were made up of isolated pockets of oil and, that despite gas production in the immediate vicinity, these formations should be spaced on an 80 acre "laydown" plan in order to best drain the reservoir and protect the correlative rights of all mineral owners.

In part, Lassiter's testimony was rebutted by an adverse witness, John Bozeman, who was the appellee's second witness. As a petroleum geologist familiar with the area, Bozeman testified that his professional opinion was that the Morrow "A" was primarily a gas reservoir. He did agree with Lassiter on one point, that the Morrow was primarily restricted to underlying the NE ¼ of Section 15, and that it extended in a northeasterly direction to underlay approximately 75% of Section 11. He also testified that the reason the Hopper Well only produced oil at the time was because the Morrow "A" had suffered water damage during drilling operations; but the formation was slowly recovering from the damage and gas production was increasing from the Hopper Well. Bozeman then testified that he believed Section 15 should remain on 640 acre spacing for the Morrow "A" and Chester formations and the best way to adequately drain the area of hydrocarbons and protect correlative rights would be to drill an increased density well north of the Hopper Well.

Nearly all the testimony regarding any change in knowledge of conditions, subsequent to the original spacing orders, was elicited from Bozeman. This testimony was restricted to a discussion of three wells: The Hopper Well; the Glenda Well directly offsetting Section 15 to the east; and the Champlin Well, drilled nearly three

miles east in Section 1, in the township east of the land in question here. The crux of the information Bozeman learned from these wells is that the Morrow "A" tended to run in a northeasterly direction out of Section 15, possibly extending into as much as 80% of Section 11, immediately to the northeast of the Hopper Well.

In support of its application for an increased density well, Mustang presented the testimony of staff geologist David Beatty. Beatty essentially confirmed all of the testimony and conclusions offered by Bozeman, stating that 77% of the Morrow wells in that area, and 87% of the Chester wells in that area, are all gas producers. Beatty also testified that he had used the new log information obtained from drilling the Glenda well in Section 14 to reconstruct his structure maps of the area and had concluded that a Morrow "A" well drilled north of the Hopper Well would be a gas producer, producing as much as 15,000 cubic feet of gas per barrel of oil. Beatty also confirmed the testimony from Bozeman that the Hopper Well was slowly recovering from the damage inflicted during drilling and that gas production had risen from an initial test of being too small to measure, to the point that the Hopper Well was producing as much as 300 MCF of gas and 140 barrels of oil per day at the time of the hearing. Beatty contradicted the appellee's witnesses' testimony regarding the area of Section 15 that was underlain by producible hydrocarbons, stating that he believed at least three quarter-sections would be contributing to gas production if an increased density well were drilled in the unit. The testimony of the other witnesses was restricted to proportionate mineral ownership in Section 15, and is not relevant to the determination of the issues raised by this appeal.

### IV.

■ We have difficulty finding substantial evidence of a change in conditions or change in knowledge of conditions in the record before us here. Substantial evidence has been defined as "something more than a scintilla; possessing some-

thing of substance and of relevant consequence carrying with it a fitness to induce conviction, but remains such that reasonable men may fairly differ on the point of establishing the case." *Union Texas Petroleum v. Corporation Commission*, Okl., 651 P.2d 652, 662 (1981); *Central Oklahoma Freight Lines v. Corporation Commission*, Okl., 484 P.2d 877, 879 (1971). In this case, the strongest evidence favoring despacing came from the witness Lassiter. This Court has been unable to find substantial evidence in other cases in which the applicants presented far more supportive evidence than was presented here. See e.g., *Union Oil Company of California v. Brown*, 641 P.2d 1106, 1109 (Okl.1981); *Phillips Petroleum Company v. Corporation Commission*, Okl., 461 P.2d 597 (1969). Our review of the evidence forces us to conclude that the applicant failed to provide substantial evidence to show a change in conditions or a change in knowledge of conditions upon which to base Corporation Commission Order No. 292454.

Accordingly the back dating issue presented by appellee Hopper on her counter-petition is rendered moot.

Corporation Commission Order No. 292454 is hereby VACATED.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, DOOLIN, KAUGER and SUMMERS, JJ., concur.

ALMA WILSON, J., dissents.

LAVENDER, J., not voting.