OSCN Found Document:ROUSE v. OKLAHOMA MERIT PROTECTION COMMISSION

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 ROUSE v. OKLAHOMA MERIT PROTECTION COMMISSION
2015 OK 7
Case Number: 112637
Decided: 02/17/2015
As Corrected: February 19, 2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 7, __ P.3d __

 

CHESTER ROUSE, Petitioner,
v.
OKLAHOMA MERIT PROTECTION COMMISSION, AND GRAND RIVER DAM AUTHORITY, Respondents.

APPEAL FROM THE DISTRICT COURT OF MAYES COUNTY

Honorable Rebecca J. Gore, Trial Judge

¶0 The Grand River Dam Authority terminated the employment of the petitioner, Chester Rouse, after several years of evaluations of inefficiency, incompetence, and misconduct, and after three significant events which occurred at its coal fired plant. Rouse appealed the termination to the Oklahoma Merit Protection Commission and then to the district court. The administrative appeal and the district court appeal each resulted in the affirmation of the termination. Rouse appealed and we retained the appeal, and affirm the administrative appeal and the trial court.

OKLAHOMA MERIT PROTECTION COMMISSION AFFIRMED; 
TRIAL COURT AFFIRMED.

James C. Thomas, William D. Thomas, Tulsa, Oklahoma, for Appellant.
J. Heath Lofton, Vinita, Oklahoma, for Appellee.

KAUGER, J.:

¶1 This is the second appeal resulting from the Grand River Dam Authority's (GRDA) termination of the appellant, Chester Rouse (Rouse/employee). The first case, Rouse v. Grand River Dam Authority, 2014 OK 39, 326 P.3d 1139, involved the issues of whether the employee: 1) was barred by sovereign immunity from bringing a federal claim under the Fair Labor Standards Act, 29 U.S. C. §§201 et seq.; and 2) could assert a tort claim under Oklahoma law. The unanimous Court affirmed the trial court's dismissal of the employee's lawsuit because we determined that legislatively authorized administrative remedies were available through an appeal to the Oklahoma Merit Protection Commission (OMPC). The employee appealed to the OMPC, and then to the district court. This cause concerns the employee's appeal of the district court's order upholding the GRDA's termination of Rouse.

¶2 The employee raises 16 issues in his petition in error, some of which are either redundant, repetitive, related,[1] or were not briefed on appeal.[2] We consolidate the allegations of error into four succinct, broader encompassing issues. The four determinative issues are whether the trial court erred in: 1) its statutory interpretation and application of 74 O.S. 2011 §840-6.5;[3] 2) determining that the reasons for termination were not pretextual, or post hoc rationalizations; 3) determining that the employee was estopped from challenging the level of discipline imposed (termination); and 4) its review of the OMPC's ruling and the introduction of evidence. After consideration of all of the dispositive issues, we affirm the trial court.

FACTS

¶3 The appellee, the GRDA terminated the employment of the appellant, Chester Rouse (Rouse/employee) on February 17, 2012. The GRDA had employed Rouse at its electricity generating, coal fired plant in Chouteau, Oklahoma, since May of 1982. Rouse started as an auxiliary equipment operator, and in 1984 he was promoted to the position of control room operator where he remained until 2005. In November of 2005 he was made operations shift supervisor, a position in which he remained until he was terminated. Nothing in the record indicates specific performance issues during his tenure at GRDA prior to 2005. However, it appears that after he was placed in the position as of shift supervisor in November of 2005, his performance became a reoccurring issue.

¶4 In 2006 and 2007, his evaluations noted he was taking a lot of extra time on smoke breaks. In 2008, he was told that he was wasting excessive time smoking and reading fictional books while on duty. Apparently, Rouse spent so much time in the designated smoking room, the room became referred to as "Jay's Office" by other employees. Rouse's 2008 performance reviews rated him as needing improvement, inefficient, guilty of misconduct, and needing to set a better example for his crew. His 2009 evaluations again noted the need to set a better example for his crew.

¶5 Rouse was suspended without pay for seven working days on July 19, 2010. The reasons given for the suspension included: wasting time smoking and reading fictional books at work, having evaluations rated as needing improvement because of inefficiency and misconduct, lack of setting a good example for employees, negative and unprofessional behavior, and using bitter language. The GRDA initially considered a ten day suspension, but reduced it to only seven days after Rouse expressed remorse and commitment to improve in behavior and leadership.

¶6 At the time of his discharge, Rouse was a classified employee. The GRDA provided Rouse with notice of proposed disciplinary action of termination on January 11, 2012, and a pre-termination hearing was conducted on January 20, and February 6, 2012, giving Rouse an opportunity to respond. By letter dated February 17, 2012, Rouse was officially terminated based on Merit Rule 530:10-11-91[4] and 74 O.S. 2011 §840-6.5.[5]

¶7 The letter stated that Rouse was being terminated for inefficiency, misconduct, insubordination, inability to perform the duties of the position, and violations of the Oklahoma Personnel Act. Additionally, it referenced specific instances such as Rouse's: 1) incomplete work task assignment from August of 2011; 2) incompetence in handling an alarm event occurring on December 13, 2011; and 3) inattentiveness to a costly tube leak/overflow event on December 14, 2011. It also referenced the fact that staff members reported that Rouse was regularly unable to identify key problems and take the necessary actions appropriate for his position and it referenced the prior suspension without pay in 2010.

¶8 Just prior to the termination, on December 1, 2011, the GRDA got a new CEO and Director of Investments, Dan Sullivan (CEO). On December 15, 2011, the day after a significant flooding event had occurred and two days after a significant boiler chemistry event had occurred, Sullivan met with Rouse at Rouse's request. Apparently, Rouse requested to switch to an unclassified position, a switch which he previously had been denied. In an otherwise cordial meeting, Sullivan testified at the very end of their meeting Rouse made veiled threats about taking further action on a wage claim, but he really did not recall exactly what was said or explain what he meant by "veiled threats."

¶9 After receiving the February 17, 2012, termination letter, Rouse contacted the GRDA's human resources department about retiring in lieu of termination. Even though he was terminated, the GRDA's CEO, Sullivan, in deference to his years of service, accommodated Rouse by halting the termination and permitting him to retire instead, and even waiving the sixty day notice period. As a result, Rouse secured thousands more than he would have had he been terminated including his full salary and longevity pay until his retirement date of March 1, 2012, in addition to other retirement benefits such as an insurance subsidy of $200.00 that is not available to terminated employees.

¶10 The employee appealed his termination to the OMPC on March 9, 2012, alleging that he was fired as retaliation for cooperating with a Department of Labor (DOL) investigation which had resulted in the GRDA having to pay some employees back wages in May of 2010, for asking employees to show up 10-15 minutes before their shifts started so that they would start their shifts on time. The time frame for the back wages was January of 2008 to January of 2010. Rouse received a total of $506.10 before taxes as a result of the investigation.[6]

¶11 On appeal, Rouse sought reinstatement, as well as back pay and a promotion to an unclassified position. An administrative law judge (ALJ) held a two day trial on June 13-14, 2013, and issued a final order on August 16, 2013, finding that the GRDA had proven, by a preponderance of the evidence, just cause to discipline the employee for insubordination, inefficiency, and inability to perform his duties and that the discipline imposed was just.

¶12 During the proceeding, the GRDA argued that Rouse had agreed to waive an appeal to the OMPC in exchange for being allowed to retire rather than be terminated. However, the judge determined there was insufficient evidence of a "meeting of the minds" to such an agreement which would bar an appeal, but that Rouse accepted the benefits of retirement without taking any steps to clarify any misunderstanding even after the GRDA took steps to advice Rouse and his attorney of its understanding that an appeal right was waived. Accordingly, the judge determined the Rouse should be estopped from challenging the level of dicipline imposed (termination) but that even if such estoppel were inapplicable, the cumulative effect of his misconduct, the serious nature of the incidents concerned, and Rouse's refusal to acknowledge his misconduct or take any responsibility thereof justified termination.

¶13 On October 1, 2013, the OMPC issued its final order upholding the ALJ's decision and denying reconsideration. On October 7, 2013, the employee filed a petition for judicial review in the District Court of Mayes County, Oklahoma.[7]

¶14 On February 20, 2014, the trial court affirmed the ALJ and OMPC. On March 11, 2014, the employee filed an appeal and on June 5, 2014, filed a motion for this Court to retain the cause. We granted the motion to retain on June 19, 2014, and the cause was assigned to this office on November 13, 2014. This Court has long been committed to the rule that an administrative decision will be affirmed on appeal if it is supported by substantial evidence[8] and it is not arbitrary or capricious.[9]

PURSUANT TO 74 O.S. 2011 §840-6.5, WILLFULNESS OR
CULPABLE NEGLIGENCE IS NOT REQUIRED TO JUSTIFY 
TERMINATION FOR JUST CAUSE.

¶15 The employee argues that: 1) pursuant to 74 O.S. 2011 §840-6.5,[10] the GRDA must prove that the employee acted with an element of willfulness or culpable negligence to justify any cause for termination of a classified employee; and 2) because the GRDA offered no specific evidence of Rouse's willful conduct or culpable negligence, the termination must be reversed. The GRDA contends that such intent or culpability is not required.

¶16 The pertinent language of 74 O.S. 2011 §840-6.5 provides that:

Any employee in the classified service may be discharged . . . for misconduct, insubordination, inefficiency, habitual drunkenness, inability to perform the duties of the position in which employed, willful violation of the Oklahoma Personnel Act, the Merit Rules for Employment or of the rules prescribed by the Oklahoma Merit Protection Commission, conduct unbecoming a public employee, conviction of a crime involving moral turpitude, or any other just cause. .

The purpose of the OMPC is to encourage prompt and equitable resolutions of grievances at the lowest possible level and encourage resolution of disputes quickly and informally.[11] It also provides a system for the prompt, fair, and equitable disposition of appeals by employees.[12]

¶17 The statute is plain and unambiguous. When a statute is plain and unambiguous, there is no need to resort to statutory construction[13] nor does any justification exist for the use of interpretive devices to fabricate a different meaning.[14] The class of employees affected by the statute is clearly classified employees. Such employees can be discharged for any of a litany of things. The only conduct requiring willful behavior under the clear terms of the statute is "willful violation of the Oklahoma Personnel Act, the Merit Rules for Employment or of the rules prescribed by the Oklahoma Merit Protection Commission." Nothing in the terms of the act or its stated purposes or any previous decision by this Court requires that an employee terminated for "just cause" must, as Rouse argues, have been proved to have acted with an element of willfulness or culpable negligence. Accordingly, neither the OMPC nor the district court erred in refusing to infuse such a requirement into this cause.

THE RECORD REFLECTS THAT THE 
GRDA'S REASONS FOR TERMINATION WERE NEITHER
PRETEXTUAL NOR POST HOC RATIONALIZATIONS.

¶18 The OMPC found that, despite the employee's valiant efforts to establish that the termination was pretextual to cover the CEO's alleged real motivation for firing Rouse as retaliation for filing a wage claim, there was "simply no evidence to support this." The trial court determined that he failed to establish any pretext because Rouse admitted to: 1) not completing the assignment given to him in August of 2011; 2) neglecting to check the equipment during his shift on December 14, 2011 and; 3) he did not specifically instruct his crew to check the equipment. Additionally, the trial court found that because of these same admissions by Rouse, he failed to demonstrate that the offered reasons for termination were post hoc rationalizations.

¶19 Rouse argues that the evidence is clear that his supervisors had knowledge that he complained to the DOL for not getting paid to show up for shifts 10-15 minutes early, and that it was not until he did complain, that, for the first time during his thirty year tenure, he faced discipline. He also insists that he was targeted to be discharged. GRDA argues that it had multiple, valid reasons for discharge unrelated to any DOL complaint and that the reasons for supporting discharge have been consistent with his poor evaluations.

¶20 Pretextual reasons for an employer's termination of an employee come into question when an employee is alleged to have been terminated in retaliation for things such as filing a workers compensation claim,[15] or, in retaliation for reporting an employer's violation of the law and/or public policy.[16] An employer can rebut an employee's claim by showing that the discharge was for a legitimate non-retaliatory reasons which obviously includes the inability to perform the assigned duties.[17] This is precisely what the GRDA did in this cause.

¶21 The only evidence in the record supporting Rouse's claim that supervisors and the CEO knew that he filed a complaint with the DOL and that he was fired in retaliation for doing so, was Rouse's own "because I said so" testimony.[18] This evidence is countered with substantial evidence of years of inefficiency, insubordination, and inability to perform the duties of his position, all of which were admitted to by Rouse. The wage claim was resolved by 2010, nearly two years before Rouse was terminated, and no one knew who actually called the DOL to complain about not getting paid for showing up 15 minutes early.

¶22 Additionally, the cited reasons for termination were supported by testimony and documentation because Rouse: 1) failed to complete a work assignment that every other supervisor managed to complete on time; 2) was inattentive and failed to react to a severe water chemistry condition on December 13, 2011; and 3) failed to take action during a water leak on December 14, 2011, that destroyed and damaged equipment.[19] The GRDA was entitled to terminate Rouse for just cause and it appears that it did so and the employee has made no showing otherwise. Even if the three reasons as stated above had not occurred, the employee's inefficiency of the repetitive behavior of wasting time smoking and reading year after year while at work would have been more than adequate just cause for termination. Accordingly both the trial court and the OMPC are affirmed on this issue.

THE APPLICATION OF ESTOPPEL IS IMMATERIAL.

¶23 The employee was allowed to appeal his termination, despite accepting retirement benefits in lieu of termination. However, he argues that he should not have been estopped from challenging the level of discipline imposed -- termination. He also contends that applying estoppel would be unfair and contrary to public policy in this cause. The GRDA argues that whether estoppel was appropriately applied to this cause is immaterial. We agree.

¶24 Estoppel is an equitable doctrine used to prevent one party from taking a position which is inconsistent with an earlier action that places the other party at a disadvantage.[20] The employee was not estopped from appealing his termination and the GRDA's decision to terminate was supported by the evidence and was not arbitrary or capricious. Had Rouse's conduct, insubordination, inefficiency and inability to perform his duties not justified termination, then the application of estoppel may have been material to determining what level of discipline, if any, was appropriate. Nevertheless, the ALJ additionally determined that regardless of the applicability of estoppel, termination was appropriate.

¶25 Even if estoppel were incorrectly applied to this cause, because the GRDA's decision to terminate was supported by sufficient evidence, the application of estoppel was immaterial. Furthermore, the employee, while being represented by his attorney, accepted all the benefits of retirement and the financial effects of the termination were abandoned by the GRDA. If estoppel were applicable to this cause, it is the GRDA who should have been able to rely on it. However, the doctrine of estoppel is not ordinarily applicable to state agencies operating under statutory authority.[21]

THE TRIAL COURT DID NOT ERR IN ADMITTING 
EVIDENCE OF PRIOR DISCIPLINE.

¶26 The employee argues that he was denied due process because he was not provided with a specific written statement that his prior evaluations of spending too much time smoking, reading fictional books, and other incompetence would be used against him as a reason for termination after the events in December of 2011. He also then incongruously argues that he should have been given some type of progressive discipline without termination.[22] The GRDA contends that his notice was adequate and that he was given progressive discipline leading to termination.[23] Rouse's arguments regarding notice are unconvincing.

¶27 The facts demonstrate that since 2005, Rouse was progressively disciplined culminating in termination in 2012. In 2006, 2007, 2008, and 2009, his evaluations reflected his inefficiency, and insubordination. By 2010, the cumulative effect of these evaluations led to suspension without pay. By 2012, the cumulative effect of the suspension without pay, coupled with inability to perform assigned tasks and other significant incidents led to termination.[24] To argue that there was no progressive discipline imposed ignores the facts altogether. Nevertheless, progressive discipline is not mandated in all causes, nor are public employers required to prove that some less severe disciplinary act would be ineffective before the imposition of a more stringent penalty.[25] The system is designed to be conformable to a variety of circumstances and it is not a rigid program.[26]

¶28 The minimal statutory notice required by the employer is found in 74 O.S. 2011 §840-6.4 and it provides in pertinent part:

. . .B. The procedures for a pretermination hearing shall be:

1. Notice of a pretermination hearing shall be served by actual delivery or by certified or registered mail service at least seven (7) calendar days prior to the scheduled pretermination hearing;

2. Said notice of the pretermination hearing shall state all grounds for termination and shall include a general summary of evidence or physical evidence to support each of the stated grounds for termination; . . .

In the pretermination letter issued to Rouse on January 11, 2012, and attached to this opinion as an exhibit, Rouse was expressly notified that he had been disciplined in July of 2010 for a suspension without pay for inefficiency, misconduct, insubordination and inability to perform his job duties. He knew exactly why he was suspended in 2010 without pay because he actually had a pre-suspension hearing at that time, which he participated in and he was actually suspended without pay. He was expressly notified that this suspension was one of the reasons he was being terminated in 2012, in addition to the other enumerated events outlined in the notice. The employee has made no convincing showing that the statute was not followed nor does he argue that the statutory directives are on their face inadequate. Accordingly, we must determine that the trial court did not err in admitting evidence of prior discipline to support its decision to terminate.

CONCLUSION

¶29 An administrative decision will be affirmed on appeal if it is supported by substantial evidence[27] and is not arbitrary or capricious.[28] Pursuant to 74 O.S. 2011 §840-6.5,[29] the GRDA was not required to prove that the employee acted with an element of willfulness or culpable negligence to justify the termination of its classified employee. The GRDA's reasons for termination were neither pretexual nor post hoc rationalizations, but were, instead, supported by substantial evidence. Estoppel was immaterial to this cause. Because the trial court did not err in admitting evidence of prior discipline, and the employee was given adequate notice of the reasons for termination, we affirm the OMPC and the trial court.

OKLAHOMA MERIT PROTECTION COMMISSION AFFIRMED: 
TRIAL COURT AFFIRMED.

ALL JUSTICES CONCUR.

FOOTNOTES

[1] The stated issues as raised on appeal in the petition in error filed on March 11, 2014, are as follows:

1. The District Court committed error in its misapplication of the standard of review of agency decisions, as pronounced in the Oklahoma Administrative Procedures Act, 75 Oka. Stat. § 322, and simply rubber stamped the Merit Protection Commission's erroneous, adverse ruling.

2. The District Court committed error in its failure to recognize the clear evidence in the record that the ALJ exhibited personal bias against Appellant, classified employee of GRDA.

3. The District Court committed error in its failure to recognize the three stated reasons given by GRDA for Rouse's termination as being pretextual.

4. The District Court committed error in its failure to recognize the three stated reasons given by GRDA for Rouse's Termination were nothing more than post hoc rationalizations of the real reason Rouse was terminated.

5. The District Court committed error in isolating phrase in 74 Okla. Stat. §840-6.5, and concluding that a classified employee "may be discharged for misconduct, insubordination, inefficiency, habitual drunkenness, inability to perform the duties of the position in which employed."

6. The District Court committed error in not reading the statute as a whole and reading all parts of the statute together, thereby concluding that under 74 Okla. Stat. §840-6.5, a classified employee may be disciplined for "specific acts or omissions," only when "specific acts or omissions" rise to the level of "misconduct, insubordination, inefficiency, habitual drunkenness, inability to perform the duties of the position in which employed."

7. The District Court committed error in holding that the just cause statute does not require employing agency to prove some level of willfulness or culpable negligence in relationship to the alleged "specific acts or omissions."

8. The District Court committed error in ignoring the settled law on the issue of estoppel, upholding Merit Commission's misapplication of the estoppel doctrine, that Rouse was estopped from challenging his termination by GRDA. After the court's error as a matter of law, the court then compounded its error by ruling that petitioner was not prejudiced by the ALJ's ruling on estoppel.

9. The District Court committed error in upholding the Merit Commission's error which permitted GRDA to introduce evidence against Rouse, during just cause hearing which had not been referenced in the 74 Okla. Stat. § 840-6.5 due process notice.

10. The District Court committed error, as a matter of law, that allowed GRDA to introduce evidence of prior discipline against classified employee, during just cause hearing.

11. The District Court committed error in not recognizing that 74 Okla. Stat. §840-6.5 was intended to be classified employee's due process notice of the specific charges against classified employee; and that this "due process required notice which reasonably informs" person that his protected interest "may be adversely affected." Hagar v. State, 1999 OK CR 35, ¶14, 990 P.2d 894, 898.

12. The District Court committed error in upholding evidentiary decision of Merit Commission which allowed Counsel for GRDA to introduce evidence of prior discipline of Appellant, during the "just cause" part of the hearing, without giving Appellant adequate notice.

13. The District Court committed error in not ruling that GRDA's introduction of evidence of prior discipline violated Appellant classified employee's most basic right to constitutional due process.

14. The District Court committed error in upholding the three stated grounds for terminating Appellant Rouse against Rouse's claim that the language describing the grounds of termination were far too general to satisfy the requirements expressed in 74 Okla. Stat. § 840-6.5.

15. The District Court committed error in upholding the three stated grounds for terminating Appellant Rouse against Rouse's claim that the stated grounds were not supported by substantial evidence, reading the record as a whole.

16. The District Court committed error in upholding the decision of ALJ in denying Appellant's offer of exhibit that would add greater clarity to one of the grounds of GRDA's termination of Rouse.

[2] To the extent that each of its allegations of error were not contained within the arguments in its brief, they are waived. Parties waive issues by failing to brief them. Johnson v. Ford Motor Co., 2002 OK 24, ¶ 1, fn. 2, 45 P.3d 86; Burrows v. Burrows, 1994 OK 129, ¶ 3, 886 P.2d 984; American First Abstract Co. v. Western Info. Syst., Inc., 1987 OK 24, ¶ 11, 735 P.2d 1187.

[3] 74 O.S. 2001 §840-6.5 provides in pertinent part:

C. Any employee in the classified service may be discharged, suspended without pay for not to exceed sixty (60) calendar days, or demoted by the agency, department, institution, or officer by whom employed, for misconduct, insubordination, inefficiency, habitual drunkenness, inability to perform the duties of the position in which employed, willful violation of the Oklahoma Personnel Act, the Merit Rules for Employment or of the rules prescribed by the Oklahoma Merit Protection Commission, conduct unbecoming a public employee, conviction of a crime involving moral turpitude, or any other just cause. Employees in the classified service, upon final conviction of, or pleading guilty or nolo contendere to, a felony shall be discharged if the felony is job-related pursuant to Section 24.1 of Title 51 of the Oklahoma Statutes. Before any such action is taken against a permanent classified employee, the employing agency, department, institution or officer shall provide the employee with a written statement of the specific acts or omissions that are causes or reasons for the proposed action, an explanation of the agency's evidence, and an opportunity to present reasons why the proposed action is improper.

[4] Merit Rule 530:10-11-91 provides:

Conduct of classified employees

(a) Every classified employee shall fulfill to the best of his or her ability the duties of the office or position conferred upon the employee and shall behave at all times in a manner befitting the office or position the employee holds. In performing official activities the classified employee shall pursue the common good, and, not only be impartial, but act so that there can be no question of impartiality.

(b) A classified employee shall not engage in any employment, activity or enterprise which has been determined to be inconsistent, incompatible, or in conflict with his or her duties as a classified employee or with the duties, functions or responsibilities of the Appointing Authority by which the person is employed.

(c) Each Appointing Authority shall determine and prescribe those activities within applicable laws, which, for employees under its jurisdiction, will be considered inconsistent, incompatible or in conflict with their duties as classified employees. In making this determination, the Appointing Authority shall give consideration to employment, activity or enterprise which:

(1) involves the use for private gain or advantage of state time, facilities, equipment and supplies; or, the badge, uniform, prestige or influence of one's state office or employment,
or
(2) involves receipt or acceptance by the classified employee of any money or other consideration from anyone, other than the state, for the performance of an act which the classified employee would be required or expect to render in the regular course or hours of state employment or as a part of the duties as a state classified employee, or
(3) involves the performance of an act which may later be subject directly or indirectly to the control, inspection, review, audit or enforcement by such classified employee.
(d) Each classified employee shall devote full time, attention and effort to the duties and responsibilities of his or her position during assigned hours of duty.

[5] Title 74 O.S. 2001 §840-6.5, see note 3, supra.

[6] Apparently, Rouse is the person who called the DOL and complained. A formal complaint was never filed, but the DOL did investigate and order some minimal back pay to some employees. The evidence in the record reflects that, prior to Rouse's dismissal, no one even knew that he was the one who made the complaint, although he insists otherwise.

[7] Title 75 O.S. 2011 §318 provides in pertinent part:

A. 1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title. . . .

B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.

2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, naming as respondents only the agency, such other party or parties in the administrative proceeding as may be named by the petitioner or as otherwise may be allowed by law, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title. . . .

[8] State of Oklahoma ex. rel. Oklahoma Department of Agriculture v. Yanes, 1987 OK 124, ¶20, 755 P.2d 611; Corporation Commission v. Okla. State Personnel Bd., 1973 OK 94, ¶15, 513 P.2d 116, Pannell v. Farmers Union Co-Op Gin Assn, 1943 OK 256, ¶8, 138 P.2d 817.

[9] In Cox v. State ex rel. Dept. of Human Services, 2004 OK 17, ¶1, 87 P.3d 607, we stated that the factual determination to uphold an employee's discharge was clearly erroneous in view of the reliable, material, probative and substantially competent evidence or arbitrary or capricious.

Title 75 O.S. 2011 §322 provides:

(1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.

(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

[10] Title 74 O.S. 2011 §840-6.5, see note 3, supra.

[11] Title 74 O.S. 2011 §840-6.2 provides in pertinent part:

. . .A. The Oklahoma Merit Protection Commission shall establish standard internal agency grievance resolution procedures for classified state employees. The procedures shall encourage prompt and equitable resolution of grievances at the lowest possible level within the employing agency. . . .
. . .
E. The internal agency grievance resolution procedures established by the Oklahoma Merit Protection Commission shall contain the following minimum requirements:

1. Procedures encouraging resolution of disputes within the agency quickly, informally and at the lowest possible level;. . .

[12] Title 74 O.S. 2011 §840-6.5 provides in pertinent part:

A. It is the purpose of this section to provide a system for the prompt, fair, and equitable disposition of appeals by permanent classified employees who have been demoted, suspended, or discharged. Further, it is the intent of this section that all decisions rendered as a result of this procedure shall be confined to the issues submitted for decision and consistent with the applicable laws and rules.

[13] Twin Hills Golf & Country Club, Inc. v. Town of Forrest Park, 2005 OK 71, ¶6, 123 P.3d 5. Only where the legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed. Cox v. State ex rel.Oklahoma Dept. of Human Services, see note 9, supra. Because the statute is not ambiguous, the employee's argument that the statutory interpretation doctrines of noscitur a sociis and ejusdem generis is misplaced. Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶¶18-19, 139 P.3d 873 [Noscitur a sociis asserts that the meaning of an unclear or ambiguous word or phrase should be determined by the words immediately surrounding it. Ejusdem generis applies when (1) a statute contains a specific enumeration; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration is made, usually following the enumeration; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.]

[14] Strong v. State of Oklahoma, ex rel., The Oklahoma Police Pension and Retirement Board, 2005 OK 45, ¶8, 115 P.3d 889; Keating v. Edmondson, 2001 OK 110, ¶15, 37 P.3d 882; Neer v. State ex rel. Oklahoma Tax Comm'n, 1999 OK 41, ¶16, 982 P.2d 1071.

[15] Buckner v. General Motors Corp., 1988 OK 73, ¶¶9-11, 760 P.2d 803.

[16] For example in Gilmore v. Enogex, Inc, 1994 OK 76, 878 P.2d 360, an at-will employee attempted to sue his employer for refusing to submit to a random drug test which was determined not to be a violation of public policy. Pretext is shown by exposing an employer's weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. Vaughn v. Epworth Villa, 537 F.3d 1147, 1153 (10th Cir. 2008); Rivera v. City & County of Denver, 365 F.3d 912, 925 (10th Cir. 2004).

[17] Buckner v. General Motors Corp, see note 15, supra.

[18] No formal complaint was ever filed. Rouse admitted that he made one phone call to an investigator one time. He did not show that anyone else even knew or suspected that he was the one who did it.

[19] In addition to Rouse's own testimony admitting to going to the "smoke shack" 3-6 times during his shift and reading books while at work, the CEO testified he did not even know Rouse before their December 2011 meeting. The Assistant General Manager and the Plant Superintendent also testified as to Rouse's inattentiveness and lack of action which was also supported by written documentation over the years. Rouse insists that these three events were trivial, arbitrary and capricious, but the substantial evidence shows otherwise.

[20] Strong v. State of Oklahoma, ex rel., The Oklahoma Police Pension and Retirement Board, see note 14, supra at ¶9; Oxley v. General Atlantic Resources, Inc., 1997 OK 46, ¶19, 936 P.2d 943; Apex Siding & Roofing Co., v. First Fed. Savings & Loan Ass'n of Shawnee, 1956 OK 195, ¶6, 301 P.2d 352. The elements of equitable estoppel are: 1) a false representation or concealment of facts; 2) made with actual or constructive knowledge of facts; 3) to a person without knowledge of, or the means of knowing, those facts; 4) with the intent that it be acted upon; and 5) the person to whom it was made acted in reliance upon it to his detriment. Sullivan v. Buckhorn Ranch Partnership, 2005 OK 41, 31, 119 P.3d 192.

[21] Strong v. State of Oklahoma, ex rel., The Oklahoma Police Pension and Retirement Board, see note 14, supra.

[22] Rouse also insists that the scope of the December 13, 2011, water chemistry alarm event were increased. This argument is without merit. Rouse was specifically notified that the water conditioning event on December 13, 2011, concerned an alarm regarding a "severe water chemistry condition." Then, even though other employees, as well as the shift supervisor's log show that water chemistry conditioning is evaluated by pH level, dissolved oxygen, conductivity and sodium, apparently, Rouse apparently assumed that "water chemistry condition" referred only to water's pH level. The notice did not limit water condition only to a pH level, so Rouse's assumptions were clearly misplaced. Furthermore, he was allowed to cross examine the other employees and address the water chemistry condition fully at trial.

[23] Due process requires adequate notice, a realistic opportunity to appear and the right to participate in a meaningful manner. Bailey v. Campbell, 1991 OK 67, ¶16, 862 P.2d 461.

[24] Title 74 O.S. 2011 §840-6.3 provides:

A. Each appointing authority shall establish written policies and procedures for progressive discipline of employees according to the rules established by the Oklahoma Merit Protection Commission.

B. Progressive discipline is a system designed to ensure not only the consistency, impartiality and predictability of discipline, but also the flexibility to vary penalties if justified by aggravating or mitigating conditions. Typically, penalties range from verbal warning to discharge, with intermediate levels of a written warning, suspension or demotion. Absent mitigating circumstances, repetition of an offense is accompanied by a generally automatic progression to the next higher level of discipline.

C. Each supervisor shall be responsible for applying discipline when necessary that is progressive in nature, appropriate for the offense, and equitable. Each supervisor shall consider aggravating or mitigating circumstances when determining the proper disciplinary action. Each supervisor shall use prompt, positive action to avoid more serious disciplinary actions. The Oklahoma Merit Protection Commission shall promulgate rules to establish the requirements and guidelines for discipline.

D. The rules shall prohibit supervisors from considering incidents that occurred longer than four (4) years prior to an offense in order to move to a higher level of discipline. The prohibition shall not apply to incidents involving the following types of conduct:

1. Criminal activity;

2. Sexual misconduct and/or harassment;

3. Racially discriminatory behavior and/or harassment;

4. Threats or acts of violence against employees in the workplace; and

5. Drug and/or alcohol use or abuse on the job.

[25] Cox v. State ex rel.Oklahoma Dept. of Human Services, 2004 OK 17, ¶18, 87 P.3d 607.

[26] Oklahoma Dept. of Public Safety v. McCrady, 2007 OK 39, ¶14, 176 P.3d 1194.

[27] State of Oklahoma ex. rel. Oklahoma Department of Agriculture v. Yanes, see note 9, supra; Corporation Commission v. Okla. State Personnel Bd., see note 8, supra; Pannell v. Farmers Union Co-Op Gin Assn, see note 8, supra.

[28] Cox v. State ex rel. Dept. of Human Services, see note 9, supra. Title 75 O.S. 2011 §322 see note 9, supra.

[29] Title 74 O.S. 2011 §840-6.5, see note 3, supra.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1999 OK CR 35, 990 P.2d 894, 70 OBJ 2766, Hagar v. State
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 24, 735 P.2d 1187, 58 OBJ 1056, American First Abstract Co. v. Western Information Systems, Inc.
Discussed
 1987 OK 124, 755 P.2d 611, 58 OBJ 3426, State ex rel. Oklahoma Dept. of Agriculture v. Yanes
Discussed
 1988 OK 73, 760 P.2d 803, 59 OBJ 1801, Buckner v. General Motors Corp.
Discussed
 1994 OK 76, 878 P.2d 360, 65 OBJ 2238, Gilmore v. Enogex, Inc.
Discussed
 1994 OK 129, 886 P.2d 984, 65 OBJ 3967, Burrows v. Burrows
Discussed
 1997 OK 46, 936 P.2d 943, 68 OBJ 1275, Oxley v. General Atlantic Resources, Inc.
Discussed
 1956 OK 195, 301 P.2d 352, APEX SIDING & ROOF. v. FIRST FED. SAV. & L. ASS'N
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 2002 OK 24, 45 P.3d 86, JOHNSON v. FORD MOTOR CO.
Discussed
 1973 OK 94, 513 P.2d 116, CORPORATION COM'N v. OKLAHOMA STATE PERSONNEL BD.
Discussed
 2004 OK 17, 87 P.3d 607, COX v. STATE ex rel. DEPT. OF HUMAN SERVICES
Discussed at Length
 2005 OK 41, 119 P.3d 192, SULLIVAN v. BUCKHORN RANCH PARTNERSHIP
Discussed
 2005 OK 45, 115 P.3d 889, IN THE MATTER OF STRONG
Discussed
 2005 OK 71, 123 P.3d 5, TWIN HILLS GOLF & COUNTRY CLUB, INC. v. TOWN OF FOREST PARK
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 2007 OK 39, 176 P.3d 1194, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADY
Discussed
 2014 OK 39, 326 P.3d 1139, ROUSE v. GRAND RIVER DAM AUTHORITY
Discussed
 1991 OK 67, 862 P.2d 461, Bailey v. Campbell
Discussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax Commission
Discussed
 1943 OK 256, 138 P.2d 817, 192 Okla. 652, PANNELL v. FARMERS UNION CO-OP. GIN ASS'N
Discussed
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 318, Judicial Review
Cited
 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - Affirmance
Discussed